David RIOS, Appellant,

v.

TEXAS COMMERCE BANCSHARES, INC., a Texas Corporation, d/b/a Texas Commerce Bank, McAllen—N.A. and Robert Tuttle, Appellees.

No. 13–94–532–CV.

Court of Appeals of Texas, Corpus Christi.

Aug. 29, 1996.

Rehearing Overruled Oct. 3, 1996.

Jay M. Wright, Corpus Christi, for appellant.

Charles Willette, Jr., Hugh P. Touchy, Willette & Aguilar, Brownsville, for appellees.

Before DORSEY, FEDERICO G. HINOJOSA, Jr. and RODRIGUEZ, JJ.

## OPINION

FEDERICO G. HINOJOSA, Jr., Justice.

Appellant, David Rios, sued appellees, Texas Commerce Bancshares Inc., a Texas Corporation d/b/a Texas Commerce Bank, McAllen–N.A. ("TCB") and Robert Tuttle for wrongful termination. Appellees filed a motion for summary judgment and the trial court granted the motion. By four points of error, appellant contends that the trial court erred in granting the motion for summary judgment. We affirm.

On March 25, 1985, TCB employed appellant as an Assistant Vice President/ Commercial Loan Officer at an annual salary of $28,-000 per year. Appellant received evaluations in November 1985 from Eleazar Lucio and in November 1986 from John Welch, reflecting that his performance in the commercial loan department was less than satisfactory and needed improvement. This was the lowest rating appellant could receive without his performance being totally unacceptable. Subsequently, appellant was transferred to the loan workout department. TCB established the loan workout department because of the financial downturn in the Rio Grande Valley. The loan workout department handled millions of dollars in delinquent loans and assets. The bank considered this a lat-eral move because appellant did not move from the credit department, lose his title, or take a pay cut. According to Robert Tuttle, supervisor of the loan workout department, appellant's work was often late and poorly researched. Appellant was tardy on a regular basis, disrupted bank business by receiving excessive personal phone calls, and failed to follow directions that he felt were wrong.

In December 1988, appellant met with a TCB client, Hermelinda Perez, to discuss her denied loan application. Prior to this meeting, appellant was reminded of the bank's policy not to disclose information contained in credit bureau reports, other than TCB information. During the meeting, appellant read the report to Perez who took notes and then wrote a letter explaining all the negative remarks contained in the report. When Perez's letter was given to Deborah Benson, chief credit officer, she noticed that the items discussed in the letter were listed in the exact order as shown on the credit bureau report. Benson then discussed the matter with Tuttle, and they asked appellant for an explanation.

Appellant denied showing the report to Perez, but he did admit that he had read the report to her. Appellant explained that he talked to a customer representative at a credit bureau, possibly the one used by the bank, and was told he could discuss the report with Perez. Tuttle and Benson then reprimanded appellant. Appellant tossed or slammed Perez's file on Tuttle's desk and said, "Well, if you do not like the way I handle it, then why do you give me the assignment, why don't you do it?" Appellant then left Tuttle's office.

Appellant heard nothing more about the credit report or the confrontation in Tuttle's office until he was called into the office of TCB President Randall McLelland on February 14, 1989. Approximately one week before the meeting, Tuttle submitted appellant's evaluation to McLelland for approval. Tuttle rated appellant's performance as "does not meet acceptable standards," the lowest possible rating. McLelland then

learned of the credit report incident. McLelland questioned Tuttle and Benson separately about their encounter with appellant, and their reports of the incident were similar.

On February 14, 1989, McLelland questioned appellant about the incident and then fired him for insubordination to his supervisor, poor job performance as reflected in evaluations, and failure to comply with bank policy. On June 26, 1989, appellant filed a charge of discrimination with the Texas Commission on Human Rights ("Commission") alleging that TCB had discriminated against him because he is Hispanic. The Commission issued appellant a right to sue letter and this lawsuit commenced. In addition to discrimination claims, appellant alleged wrongful termination, negligent failure to investigate, breach of the duty of good faith and fair dealing in an employment context, defamation, intentional and negligent infliction of emotional distress, and tortious interference with business relations. Appellees responded to all allegations by general denials, special exceptions, and affirmative defenses.

Appellees then filed a motion for summary judgment and alleged the following grounds:

1) there was no express or implied contract between appellant and TCB;

2) appellant was an at will employee and subject to discharge with or without cause;

3) appellant's admission that he read the credit report information to a client even though he knew the bank policy against such disclosure establishes as a matter of law that TCB was not negligent in failing to investigate the incident;

4) Texas does not recognize a claim for breach of the duty of good faith and fair dealing in the at will employment context;

5) the defamation claim is barred by the one year statute of limitations pursuant to TEX. CIV. PRAC. & REM.CODE ANN. 16.002;

6) no defamatory statements were published because appellant admitted to violating a bank policy;

7) appellant has no cause of action for invasion of privacy because TCB does not disclose to prospective employers that an employee was terminated, and the only way this information becomes public is if employment records are subpoenaed or if the employee discloses the information;

8) appellant has no cause of action for intentional infliction of emotional distress because his discharge was not extreme and outrageous;

9) although Texas does not recognize a claim for negligent infliction of emotional distress, mental anguish damages are recoverable when a legal duty has been breached, and TCB has breached no legal duty;

10) appellant has no cause of action for tortious interference with his business relations because he had no contract for employment with the bank, and he has failed to identify other ongoing business relations that were damaged by TCB or Robert Tuttle; and

11) appellant has no cause of action under the Texas Commission on Human Rights Act because he was discharged for poor job performance, insubordination, and breach of bank policy, rather than on the basis of his race.

The trial court granted appellees' motion for summary judgment.

 A motion for summary judgment must expressly state the grounds upon which it is made. *McConnell v. Southside Indep. Sch. Dist.*, 858 S.W.2d 337, 339 (Tex.1993); TEX.R. CIV. P. 166a(c). Summary judgments may not be affirmed or reversed on grounds not expressly set forth in the motions presented to the trial court. *City of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671, 677 (Tex.1979); *Carlisle v. Philip Morris, Inc.*, 805 S.W.2d 498, 518 (Tex.App.—Austin 1991, writ denied); *Dhillon v. General Accident Ins. Co.*, 789 S.W.2d 293, 295 (Tex. App.—Houston [1st Dist.] 1990, no writ). *See City of Mission v. Ramirez*, 865 S.W.2d

579, 581 (Tex.App.—Corpus Christi 1993, no writ). A motion for summary judgment must stand or fall on the grounds expressly presented in the motion, and a court may not rely on briefs or summary judgment evidence in determining whether grounds are expressly presented. *McConnell,* 858 S.W.2d at 339.

The proper inquiry on appeal is whether the defendant, in seeking summary judgment, fulfilled his initial burden 1) to establish as a matter of law that there remained no genuine issue of material fact as to one or more essential elements of the plaintiff's cause of action or 2) to establish his affirmative defense to the plaintiff's cause of action as a matter of law. *Casso v. Brand,* 776 S.W.2d 551, 556 (Tex.1989); *Nixon v. Mr. Property Management Co.,* 690 S.W.2d 546, 548–49 (Tex.1985); *Swilley v. Hughes,* 488 S.W.2d 64, 67 (Tex.1972). In deciding whether there is a disputed material fact issue precluding summary judgment, evidence favorable to the non-movant must be taken as true. *Nixon,* 690 S.W.2d at 549. Every reasonable inference must be indulged in favor of the non-movant and any doubts resolved in his favor. *Id.* Once the movant establishes an affirmative defense which would bar the suit as a matter of law, the non-movant must then produce summary judgment proof raising a fact issue in avoidance of the affirmative defense. *Gonzalez v. City of Harlingen,* 814 S.W.2d 109, 112 (Tex. App.—Corpus Christi 1991, writ denied). When the summary judgment does not state the specific grounds upon which it is granted, it must be affirmed if any one of the grounds asserted in the motion is meritorious. *Carr v. Brasher,* 776 S.W.2d 567, 569 (Tex.1989).

By his second point of error, appellant complains that genuine issues of material fact exist concerning a breach of an express or implied employment contract. Appellant contends that these issues include his claims of negligent investigation, breach of the duties of good faith and fair dealing, and negligent and intentional infliction of emotional distress. Appellant contends that some of the terms and conditions of his employment agreement are set forth in the policy statements and written guarantees found in TCB's performance evaluation forms. Appellant also claims that a letter, dated March 19, 1985, is a contract of employment. The letter states, in relevant part, as follows:

> On behalf of Texas Commerce Bancshares and Jim Bexley, I would like to confirm the offer of the position of Assistant Vice President, Commercial Loan Officer at Texas Commerce Bank–McAllen. Your compensation package includes a base salary of $28,000 with an annual review effective December 1985. You will be reimbursed for mileage and will have use of a club membership for bank business development purposes.

> Eligibility for three weeks of vacation will begin April 1986. Relocation expenses include transportation of your household goods, including mileage, one week's temporary living and meal allowance, to be discussed further upon acceptance of the position.

> Texas Commerce Bancshares is in a period of vigorous and sustained growth. We believe that providing talented bankers as yourself with continued challenge and opportunity for career growth enhances our future as a corporation.

Texas follows the doctrine of employment at will, and employment for an indefinite term may be terminated at will and without cause. *Schroeder v. Texas Iron Works, Inc.,* 813 S.W.2d 483, 489 (Tex.1991). Absent a specific contract term to the contrary, this doctrine allows an employee to quit or be fired without liability on the part of the employer or employee, with or without cause. *Massey v. Houston Baptist Univ.,* 902 S.W.2d 81, 83 (Tex.App.—Houston [1st Dist.] 1995, writ denied); *Reynolds Mfg. Co. v. Mendoza,* 644 S.W.2d 536, 538 (Tex.App.—Corpus Christi 1982, no writ); *Maus v. National Living Ctrs., Inc.,* 633 S.W.2d 674, 675 (Tex.App.—Austin 1982, writ ref'd n.r.e.); *see East Line & R.R.R. Co. v. Scott,* 72 Tex. 70, 10 S.W. 99, 102 (1888). A discharged

employee who asserts that the parties have contractually agreed to limit the employer's right to terminate the employee at will has the burden of proving an express agreement or written representation to that effect. *Massey*, 902 S.W.2d at 83; *Lee–Wright, Inc. v. Hall*, 840 S.W.2d 572, 577 (Tex.App.— Houston [1st Dist.] 1992, no writ); *Totman v. Control Data Corp.*, 707 S.W.2d 739, 744 (Tex.App.—Fort Worth 1986, no writ).

 To rebut the presumption of employment at will, an employment contract must directly limit in a "meaningful and special way" the employer's right to terminate the employee without cause. *Massey*, 902 S.W.2d at 83; *Lee–Wright*, 840 S.W.2d at 577; *Benoit v. Polysar Gulf Coast, Inc.*, 728 S.W.2d 403, 406 (Tex.App.—Beaumont 1987, writ ref'd n.r.e.). A hiring based on an agreement of an annual salary limits in a "meaningful and special way" the employer's prerogative to discharge the employee during the dictated period of employment. *Massey*, 902 S.W.2d at 83–84; *Winograd* v. *Willis*, 789 S.W.2d 307, 310 (Tex.App.—Houston [14th Dist.] 1990, writ denied). If an employment contract is to extend beyond one year, it must be in writing in accordance with the statute of frauds. TEX. BUS. & COM.CODE ANN. § 26.01(b)(6) (Vernon 1987).

 Appellant contends that the March 19, 1985 letter is a contract that provides he will work for TCB as an assistant vice president/commercial loan officer at an annual salary of $28,000 beginning on March 19, 1985. The only part of appellant's contention with which we agree is that the salary was $28,000. Although the letter is dated March 19, 1985, it does not specify a beginning date. Nor does it state a specific duration of time upon which the salary is based. It merely states that the "compensation package includes a base salary of $28,000." The letter clearly states that it is confirming an offer, sets forth some employment benefits, and leaves others open pending appellant's acceptance of the position. Appellant was not asked to sign and return the letter, to show that he accepted its terms.

After reviewing the summary judgment evidence, we conclude that the letter does not embody the terms of any oral agreement allegedly reached by the parties. Appellant's deposition indicates that he agreed to work for TCB under two conditions: 1) that his starting salary of $28,000 would be raised to $30,000 pending the outcome of his first evaluation and 2) that he be allowed to transfer to Houston, after a time in McAllen, if it was in the bank's best interest. Appellant testified that he requested a letter verifying these two conditions, together with a third condition—that the bank provide good clerical support. The letter of March 19, 1985, does not include the terms requested by appellant and, thus, indicates that the parties, as of that date, had not agreed on specific terms of employment. The March 19, 1985 letter did not create an employment agreement or limit in any way the right of TCB to terminate appellant at will.

 Appellant also contends that some of the terms and conditions of his employment agreement are set forth in the policy statements and written guarantees found in TCB's performance evaluation forms. The language of the evaluation form when combined with the March 19, 1985 letter does not, as appellant contends, prohibit TCB from discharging him at will and does not create an implied duty of good faith and fair dealing. The evaluation form states that its purpose is to "improve the effectiveness of the individual's performance" in order that career potential can be maximized. It further states:

> No form can take the place of frequent, honest, encouraging dialogue. This appraisal document is the formalization of that process. There should be no surprises; by the same token, managers have a responsibility to judge performance fairly and not gloss over areas requiring improvement.

Managers are instructed to discuss performance problems with employees as they arise and then at evaluation time, note performance areas needing improvement in a

fair and detailed manner. Fairness, in this context, requires that the employee's strengths and weaknesses be accurately reflected on the form in order that career goals might be reached or altered. We conclude that the statements and instructions found in TCB's performance evaluation forms were not part of an employment agreement between appellant and TCB.

We further note that neither the legislature nor the supreme court has recognized an implied covenant of good faith and fair dealing in employment relationships. *Winograd*, 789 S.W.2d at 312; *McClendon v. Ingersoll–Rand Co.*, 757 S.W.2d 816, 819 (Tex.App.—Houston [14th Dist.] 1988), *rev'd on other grounds*, 779 S.W.2d 69 (Tex.1989); *see English v. Fischer*, 660 S.W.2d 521, 522 (Tex.1983) (refusing to find that contracts contain implied duty of good faith and fair dealing). We are duty bound to follow the supreme court's authoritative expressions of law and to leave changes in the application of common law rules to that court. *Lumpkin v. H & C Communications, Inc.*, 755 S.W.2d 538, 540 (Tex.App.—Houston [1st Dist.] 1988, writ denied); *see Swilley v. McCain*, 374 S.W.2d 871, 875 (Tex.1964).

Regarding appellant's claim of negligent investigation, we have concluded that there was no limitation on TCB's ability to terminate appellant without cause. Thus, TCB would have no duty to investigate before discharging appellant. In addition, appellant's complaints that McLelland did not contact Perez to determine if appellant disclosed the information in the credit report are without merit. Appellant admitted to McLelland, Tuttle, and Benson that he read the report to Perez. This admission foreclosed the necessity of further involving Perez in the matter. Appellant's deposition shows that he knew the bank's policy forbidding such disclosure, but he called the credit bureau to verify that he could discuss the report with Perez. Such verification was meaningless in the face of his employer's policy. Appellant was fired for insubordinate conduct that he does not deny under oath. We conclude that acting on the credit bureau's response, rather than bank

policy, and commenting that Tuttle should do the work himself was clearly insubordinate conduct.

Appellant alleged negligent infliction of emotional distress arising from TCB's breach of an employment contract. Texas does not recognize a cause of action for negligent infliction of emotional distress. *Boyles v. Kerr*, 855 S.W.2d 593, 594 (Tex.1993).

Appellant also alleged intentional infliction of emotional distress arising from TCB's breach of an employment contract. We have concluded that there was no express or implied employment agreement between the parties. Thus, there could be no breach.

After reviewing all of the summary judgment evidence, we conclude that there are no genuine issues of material fact to support appellant's breach of contract claim. Accordingly, we overrule appellant's second point of error.

By his fourth point of error, appellant contends that a genuine issue of material fact exists concerning his claim that Robert Tuttle tortiously interfered with the employment agreement.

A cause of action for tortious interference with a contract is established upon a showing that: 1) a contract existed between the plaintiff and a third party that was the subject of interference; 2) the defendant's act of interference was willful and intentional; 3) the intentional act of the defendant was a proximate cause of damage to the plaintiff; and 4) actual damage and loss to the plaintiff resulted. *Victoria Bank & Trust Co. v. Brady*, 811 S.W.2d 931, 939 (Tex.1991). One is privileged to interfere with another's contractual relations 1) if it is done in a bona fide exercise of his own rights, or 2) if he has an equal or superior right in the subject matter to that of the other party. *Id.*

Because we have found that the March 19, 1985 letter did not create an employment contract, and because Tuttle had a legal right and duty to report appellant's admitted viola-

tion of bank policy, we overrule appellant's fourth point of error. *See Massey,* 902 S.W.2d at 85.

■ By his third point of error, appellant contends that there were genuine issues of material fact concerning his claim of defamation by invasion of privacy, libel, and slander because he was compelled to publish to third parties the false reason for his discharge. Appellant argues that TCB falsely accused him of disclosing the credit report information. TCB asserts that any disclosures made by appellant were based on the truth.

■ A statement is defamatory if it tends to harm the reputation of another so as to lower him in the estimation of the community or to deter third persons from associating or dealing with him, or if it tends to expose him to public hatred, contempt, or ridicule. *Hardwick v. Houston Lighting & Power Co.,* 881 S.W.2d 195, 197 (Tex.App.—Corpus Christi 1994, writ dism'd w.o.j.). Whether a statement is capable of defamatory meaning is generally a question of law unless the statement's meaning is ambiguous; then the question of interpretation is left for the jury. *Musser v. Smith Protective Serv., Inc.,* 723 S.W.2d 653, 654 (Tex.1987); *Hardwick,* 881 S.W.2d at 197. In suits brought by private individuals, truth is an affirmative defense to a defamation claim. *Randall's Food Markets, Inc. v. Johnson,* 891 S.W.2d 640, 646 (Tex.1995). In order to sustain a summary judgment in this case, the statement must not be defamatory as a matter of law. *See Hardwick,* 881 S.W.2d at 197.

■ After reviewing the summary judgment evidence, we conclude that the statement at issue is not defamatory because it is the truth. The motion for summary judgment includes excerpts from appellant's deposition. Appellant admitted under oath that he read the information from the credit report to Perez. He also admitted that he knew the bank's policy forbidding such disclosure prior to his meeting with Perez. These testimonial declarations are contradictory to appellant's position and are quasi-admissions. *See Hennigan v. I.P. Petroleum Co., Inc.,* 858 S.W.2d 371, 372 (Tex.1993). In order to treat quasi-admissions as conclusive admissions, the testimony must be deliberate, clear, and unequivocal and a hypothesis of mere mistake or slip of the tongue must be eliminated. *Id.* Appellant's deposition satisfies this test, and he does not claim that confusion caused mistaken responses. *See id.* In addition, the deposition testimony coincides with statements made by appellant to his immediate supervisors and to the bank president at the time of the incident. Thus, appellant's admissions are conclusive.

Although appellant's summary judgment response included the deposition of Hermelinda Perez, which contradicts his admissions, appellant does not explain or repudiate his own deposition testimony. Moreover, the violation of bank policy was only one of several factors that McLelland considered in making the decision to fire appellant. Appellant failed to report to TEC or prospective employers that other primary reasons for his discharge were insubordinate conduct and poor job performance as reflected in evaluations. Having concluded that the statement at issue is not defamatory, we overrule appellant's third point of error.

By his first point of error, appellant contends that there are genuine issues of material fact concerning his allegation of discrimination which he brought under the Texas Commission on Human Rights Act ("TCHRA"). TEX.REV.CIV. STAT. ANN. art. 5221k (Vernon 1987) (repealed 1993) (current version at TEX. LAB.CODE ANN. §§ 21.001 *et seq.* (Vernon 1996)). Appellant specifically complains 1) that the job performance evaluations which led to his discharge were low because he is Hispanic, 2) that he was demoted because of his race, and 3) that he was subjected to a discriminatory atmosphere.

■ The TCHRA prohibits an employer from discriminating against an individual with respect to compensation, or the terms, conditions, or privileges of employment because of race. TEX.REV.CIV. STAT. ANN. art. 5221k, § 5.01 (Vernon 1987) (repealed 1993)

(current version at TEX. LAB.CODE ANN. § 21.051 (Vernon 1996)). One of the purposes of the TCHRA is the correlation of federal and state law in the area of employment discrimination. *Schroeder,* 813 S.W.2d at 485. Accordingly, we may look to federal case law interpreting Title VII in determining the burden of proof under the TCHRA. *Id.; Farrington v. Sysco Food Serv., Inc.,* 865 S.W.2d 247, 251 (Tex.App.—Houston [1st Dist.] 1993, writ denied).

■■■■ In order to show a *prima facie* case of employment discrimination, the plaintiff must show 1) that he was a member of a protected class, 2) that he suffered an adverse employment action, and 3) that nonprotected class employees were not treated similarly. *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 801–03, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668 (1973); *Farrington,* 865 S.W.2d at 251. Once the plaintiff has established a *prima facie* case, the burden of production shifts to the employer to articulate legitimate, nondiscriminatory reasons for any allegedly unequal treatment. *McDonnell Douglas,* 411 U.S. at 801–03, 93 S.Ct. at 1824; *Farrington,* 865 S.W.2d at 251. If legitimate nondiscriminatory reasons are established by the employer, the burden then shifts back to the plaintiff to prove that the employer's articulated reasons are a pretext for unlawful discrimination. *McDonnell Douglas,* 411 U.S. at 803–05, 93 S.Ct. at 1825; *Farrington,* 865 S.W.2d at 251. Even though the burden of production shifts, the burden of persuasion remains continuously with the plaintiff. *McDonnell Douglas,* 411 U.S. at 803–05, 93 S.Ct. at 1825; *Farrington,* 865 S.W.2d at 251. Subjective beliefs of discrimination alone are insufficient to establish a *prima facie* case. *Montgomery v. Trinity I.S.D.,* 809 F.2d 1058, 1061 (5th Cir. 1987); *Farrington,* 865 S.W.2d at 251.

■■■ Even if we were to assume that appellant established a *prima facie* case, we find that he did not produce any evidence showing that TCB's real motive was to discriminate against him. The only evidence appellant provides in support of his claim is

his deposition, which is for the most part inconsistent and subjective.

TCB contends that appellant was terminated for a variety of reasons, including his undenied insubordination, poor job performance as reflected in evaluations, his admitted violation of bank policy, and excessive tardiness. Appellees included, as part of the summary judgment evidence, evaluations performed by Eleazar Lucio, John Welch, and Robert Tuttle. Comments on these evaluations about appellant's performance are similar and reflect that appellant was deficient in interpersonal skills, as well as in his ability to plan and organize his work. Scores on appellant's first two evaluations, completed by Lucio and Welch, indicated a need for improvement. These scores were the lowest an employee could receive without being unacceptable.

Appellant maintains that Welch gave him a lower rating than ratings he gave two Anglo employees because appellant is Hispanic. However, appellant testified that he believed Welch merely copied Lucio's evaluation, and that Lucio's rating was not based on appellant's race. This testimony does not prove Welch's intent to discriminate against appellant. Instead, it shows that two supervisors viewed appellant in the same light. Moreover, appellees included Welch's deposition testimony which indicates that the quantity, quality, and timeliness of appellant's work were below that of other employees. Welch testified that appellant's analysis skills were deficient; his reports had to be corrected by others before they could be submitted for approval; and his loan presentation packages were late 99% of the time. Appellant testified 1) that he disagreed with Welch's criticism and 2) that he could not say why Welch "picked" on him, but "sensed" that it was because appellant was Hispanic. The evidence shows that after appellant was transferred from Welch's supervision in the commercial loan department, two Hispanic lenders were hired.

Tuttle's evaluation, which was completed after the credit report incident, rated appel-

lant's performance at zero. Appellant admitted violating bank policy and did not deny insubordinate acts directed at Tuttle. Tuttle's comments also noted appellant's tardiness, late work, and argumentative nature. Considering these factors, comments similar to those on previous evaluations, and the prior low ratings, a score of zero appears to be proper. Appellant admitted in his deposition that an employer would be justified in discharging an employee with such a rating. He further stated that he did not consider Tuttle to be racist.

Regarding appellant's claim that he was demoted, TCB produced evidence that appellant's transfer was a lateral move and that only his duties within the credit department changed. The salary and title remained the same. Appellant admitted that the workout section did the vital work of protecting TCB's multimillion dollar assets during a downturn in the economy. He contended, however, that he viewed the transfer as a demotion because he was not doing commercial lending as he desired. In addition, as we previously stated, several commercial lenders hired subsequent to appellant's transfer were Hispanic, thus discounting appellant's claim that he was demoted because of his race.

■ Regarding appellant's claims of discrimination in the work environment, we conclude that the conduct complained of was not severe or pervasive enough to create an objectively hostile environment. *Harris v. Forklift Sys., Inc.,* 510 U.S. 17, 20–22, 114 S.Ct. 367, 370, 126 L.Ed.2d 295 (1993). Appellant contends that non-Hispanic lenders did not want to deal with Hispanic clients. However, appellant's deposition indicates that Hispanic clients felt more comfortable conducting business in Spanish, a language in which appellant was fluent while the other lenders were not.

Appellant complains that Jim Bexley, the former bank president, made racist comments about "green cards" to Luis Parras and told employees not to speak Spanish. His deposition does not place these incidents in any type of context that could lead us to conclude that the comments were so pervasive or severe as to interfere with the work performance of Hispanic employees. *See id.* at 22–24, 114 S.Ct. at 371. Although appellant claims employees were intimidated by these actions, his own testimony contradicts this contention. In addition, appellant failed to support this claim with statements from other TCB employees, the majority of whom were Hispanic. We also note that Bexley hired appellant.

Appellant further contends that McLelland stated "they wanted to make sure Texas Commerce Bank was perceived as a bolio [white] bank." This remark was allegedly made during a conversation between McLelland and appellant regarding some changes made in a lawsuit involving the bank. Without knowing to whom "they" refers, we cannot say TCB sought such a perception. In fact, the evidence does not support such a contention. The majority of TCB employees were Hispanic, the bank actively sought Hispanic clients, and then encouraged lenders to conduct business in Spanish if clients felt more comfortable in doing so.

We conclude that summary judgment was proper as to appellant's discrimination cause of action because we find no evidence in the record negating TCB's claim that appellant was discharged for poor job performance, insubordinate conduct, and violation of bank policy. Nor has appellant produced evidence of severe or pervasive conduct indicating that the environment at TCB could be objectively viewed as hostile to Hispanics. *See id.* at 20–22, 114 S.Ct. at 370. We overrule appellant's first point of error.

Accordingly, we hold that the trial court did not err in granting appellees' motion for summary judgment.

We AFFIRM the trial court's summary judgment.