Angelica DE LEON, Appellant,

v.

Gene F. CREELY, d/b/a Creely Realtors, Appellee.

No. 13–96–388–CV.

Court of Appeals of Texas, Corpus Christi.

April 30, 1998.

William J. Fleniken, Aransas Pass, for appellant.

Sandra Sterba-Boatwright, Meredith, Donnell & Abernethy, Corpus Christi, for appellee.

Before SEERDEN, C.J., and FEDERICO G. HINOJOSA, Jr., and CHAVEZ, JJ.

## OPINION

FEDERICO G. HINOJOSA, Jr., Justice.

By four points of error, appellant, Angelica De Leon, appeals from the grant of summary judgment in favor of appellee, Gene F. Creely, d/b/a Creely Realtors. We affirm.

De Leon was a tenant of the Johanna Apartments in Corpus Christi for approximately three years, ending in January 1994. The apartments were owned, controlled, maintained, and managed by Creely Realtors. De Leon moved into apartment number two, a one bedroom, downstairs unit ("unit two"), sometime in 1991 or 1992. Directly above De Leon's apartment was apartment number seven ("unit seven").

After signing a six-month lease in November 1993, Jose Luis Erebia moved into unit seven. De Leon was disturbed by loud noises from Erebia's apartment, but she did not know Erebia personally and never spoke to him about the disturbances. De Leon complained to Creely that Erebia was "making a lot of ruckus" in his apartment, "stomping," and "moving furniture, dropping it." Several other neighbors also complained to Creely about noise caused by Erebia or his guests. Creely gave multiple warnings to Erebia between November 14 and December 24, 1993. Except for the noise problems, Creely received no other complaints about Erebia from tenants, although Creely did notify Erebia of an additional lease violation, permitting unauthorized tenants to stay in the apartment, which Creely had discovered. Erebia was warned that, as the unit's lessee, he was responsible for the conduct of his guests.

On December 24, 1993, De Leon arrived home with some family members from San Antonio. While the people in De Leon's apartment were preparing to open Christmas presents, a shotgun went off in Erebia's apartment. Pellets from the shotgun blast penetrated down through the ceiling of De Leon's apartment, striking and injuring her in the abdomen and leg. Immediately afterward, two scared-looking males, apparently concealing something beneath a coat, were seen in the parking lot in front of units two and seven. De Leon called 911 for help. She was transported to a hospital and released after treatment. The next day, upon learning of the shooting, Creely summarily evicted Erebia who vacated unit seven within twenty-four hours.

De Leon filed suit against Creely, alleging he knew or should have known, by exercising ordinary care, that the occupants of unit seven were "dangerous, unruly, predisposed to be destructive and violent," but nonetheless failed to evict them. This negligent failure to evict and negligent selection of tenants, De Leon alleged, proximately caused her injuries. Creely moved for summary judgment, and the trial court granted the motion.

The function of summary judgment is not to deprive a litigant of the right to a full hearing on the merits of any real issue of fact, but to eliminate patently unmeritorious claims and untenable claims. See Gulbenkian v. Penn, 151 Tex. 412, 252 S.W.2d 929, 931 (1952). The movant for summary judgment has the burden of showing that there is no genuine issue of material fact and that movant is entitled to judgment as a matter of law. Casso v. Brand, 776 S.W.2d 551, 556 (Tex.1989). A defendant who moves for summary judgment may meet the burden of showing that the plaintiff has no cause of action by either (1) negating at least one essential element of each theory of recovery, or (2) conclusively proving all of the elements of an affirmative defense. Wornick Co. v. Casas, 856 S.W.2d 732, 733 (Tex.1993); H.S.M. Acquisitions, Inc. v. West, 917 S.W.2d 872, 877 (Tex.App.—Corpus Christi 1996, writ denied). Once the movant establishes that it is entitled to summary judg-

ment, the burden shifts to the nonmovant to show why summary judgment should not be granted. *Casso,* 776 S.W.2d at 556; *Neuhaus v. Richards,* 846 S.W.2d 70, 77 (Tex. App.—Corpus Christi 1992, writ dism'd judgm't cor.).

In deciding whether there is a disputed material fact issue precluding summary judgment, evidence favorable to the nonmovant will be taken as true. *Nixon v. Mr. Property Management Co.,* 690 S.W.2d 546, 549 (Tex. 1985); *Rios v. Texas Commerce Bancshares, Inc.,* 930 S.W.2d 809, 814 (Tex.App.—Corpus Christi 1996, writ denied). Every reasonable inference must be indulged in favor of the nonmovant and any doubts resolved in its favor. *Nixon,* 690 S.W.2d at 549; *Rios,* 930 S.W.2d at 814.

■ The trial court's order granting the motion for summary judgment does not state the specific grounds on which it was granted. When a party moves for summary judgment on several theories and the trial court enters summary judgment without specifying the ground relied upon, we affirm the summary judgment if any one of the theories advanced is meritorious. *Martinez v. Corpus Christi Area Teachers Credit Union,* 758 S.W.2d 946, 950 (Tex.App.—Corpus Christi 1988, writ denied).

By her four points of error, De Leon contends that the trial court erred in granting summary judgment because Creely failed to conclusively establish an absence of foreseeable duty, he presented "insufficient and incomplete" evidence, and neither the motion nor the proof met the requirements of Texas Rule of Civil Procedure 166a(c).

■ De Leon's basic cause of action is negligence. The common law doctrine of negligence consists of three elements: 1) a legal duty owed by one person to another, 2) a breach of that duty, and 3) damages proximately resulting from the breach. *Greater Houston Transp. Co. v. Phillips,* 801 S.W.2d 523, 525 (Tex.1990); *Holt v. Reproductive Serv., Inc.,* 946 S.W.2d 602, 605 (Tex.App.— Corpus Christi 1997, writ denied). The threshold inquiry in a negligence case is duty. *El Chico Corp. v. Poole,* 732 S.W.2d 306, 311 (Tex.1987); *Holt,* 946 S.W.2d at 605.

Creely argued in his motion for summary judgment that (1) he owed no common-law duty to De Leon and (2) he neither knew nor should have known that Erebia would commit a violent act or otherwise cause injury to De Leon.

### Common–Law Duty of Landlord to Tenant to Protect Against Crime

■ The first question to be resolved is whether Creely had a duty to protect De Leon against the criminal act of another tenant. The existence of a duty is a question of law for the court to decide from the facts surrounding the occurrence in question. *Walker v. Harris,* 924 S.W.2d 375, 377 (Tex. 1996); *Holt,* 946 S.W.2d at 606. The general rule is that a landlord is not liable to a lessee for injuries caused by an unsafe condition, which can include the unreasonable risk of harm from criminal intrusions, unless the landlord was aware of the latent dangerous condition at the time the premises were let. *Exxon Corp. v. Tidwell,* 867 S.W.2d 19, 21 (Tex.1993). If the landlord knows or has reason to know of an unreasonable and foreseeable risk of harm, then he has a duty to use ordinary care to protect tenants from criminal acts of third parties. *See Lefmark Management Co. v. Old,* 946 S.W.2d 52, 53 (Tex.1997), *Centeq Realty, Inc. v. Siegler,* 899 S.W.2d 195, 197 (Tex.1995); *Exxon,* 867 S.W.2d at 21; *Nixon,* 690 S.W.2d at 550. However, this duty is commensurate with the right of control over the property. *Lefmark,* 946 S.W.2d at 53–54; *see Exxon,* 867 S.W.2d at 21.

■ A landlord has a duty to preserve private tenants' safety in common areas within the landlord's control when criminal acts are foreseeable. *See Centeq,* 899 S.W.2d at 198–99; *Cain v. Timberwalk Apartments Partner, Inc.,* 942 S.W.2d 697, 702–703 (Tex. App.—Houston [14th Dist.] 1997, writ granted). A landlord may have the duty to protect invitees against crimes by third parties even though a commercial lessee is in possession of the premises. *See, e.g., Exxon,* 867 S.W.2d at 22 (explaining how relationship can go beyond landlord-tenant). The instant case, however, focuses on whether a control-based duty extends into a residential space

owned by the lessor, but in a private lessee's possession.

■ Ownership of property is not synonymous with control. *IDC, Inc. v. County of Nueces,* 814 S.W.2d 91, 94 (Tex.App.—Corpus Christi 1991, writ denied). The occupier of premises is the party in control of premises. *Wal–Mart Stores, Inc. v. Alexander,* 868 S.W.2d 322, 324 (Tex.1993) (citing with approval *Howe v. Kroger Co.,* 598 S.W.2d 929, 930 (Tex.Civ.App.—Dallas 1980, no writ)). In landlord/tenant situations, the sufficiency of the degree of retained control necessary to impose a duty on the landlord as well as the tenant is governed by the intent of the landlord to exercise the kind of control set forth in Restatement (Second) of Torts Sec. 328E. *Missouri Pac. R.R. Co. v. Buenrostro,* 853 S.W.2d 66, 79 (Tex.App.—San Antonio 1993, writ denied); *see* RESTATEMENT (SECOND) OF TORTS § 328E (1965) (defining "owner or occupier" in terms of "possessor"). The "control" referred to in § 328E is physical control of the property or the intention to occupy or possess the property. *See* RESTATEMENT (SECOND) OF TORTS § 328E cmt. a (1965).

■ The supreme court notes two exceptions under which one not in control of the property at the time of the injury may owe a duty to make the premises safe. One who agrees to make safe a known dangerous condition of real property owes a duty of due care. *City of Denton v. Page,* 701 S.W.2d 831, 835 (Tex.1986) (citing *Gundolf v. Massman–Johnson,* 473 S.W.2d 70 (Tex.Civ.App.—Beaumont 1971), writ ref'd n.r.e., 484 S.W.2d 555 (Tex.1972) (per curiam)). A person who creates a dangerous condition owes the same duty. *Page,* 701 S.W.2d at 835 (citing *Strakos v. Gehring,* 360 S.W.2d 787 (Tex.1962)). Although De Leon based her claim of negligence on an assertion of "negligent selection of tenants," our research has found no state recognizing such a predicate for a dangerous condition.

■ A lease grants a tenant exclusive possession of the premises as against the owner. *Holcombe v. Lorino,* 124 Tex. 446, 79 S.W.2d 307, 310 (1935) (lease is grant of an estate in land for a limited term, with conditions attached); *Brown v. Johnson,* 118 Tex. 143, 12 S.W.2d 543 (1929) (essential quality in lease is it should appear to have been intention of one party to dispossess himself of premises and of other to occupy them); *Byrd v. Feilding,* 238 S.W.2d 614, 616 (Tex.Civ.App.—Amarillo 1951, no writ) (a showing that the hirer exercises complete control over the rooms indicates a lease). It is undisputed that Creely, by the lease to Erebia, transferred to Erebia the right of possession of the apartment, and that Erebia entered into actual occupation of the apartment for what was intended to be an extended period, with an intent to exercise the right of control given him in the lease contract.

Creely attached a copy of Erebia's Johanna Apartments lease to his motion for summary judgment and offered it as evidence. The terms in the contract permit entry by the owner under limited circumstances and for limited purposes as follow:

14. WHEN OWNER MAY ENTER. If resident or resident's guest or occupant is present, then repairmen, servicemen, or owner's representatives may enter peacefully and at reasonable times for the purposes listed below. If no one is in the apartment, then repairmen, servicemen, or owner's representatives may enter peacefully and at reasonable times by duplicate or master key ... if (1) written notice of such entry is left in a conspicuous place in the apartment immediately thereafter, and (2) such entry is for responding to resident's request; repairs; estimating repair or refurbishing costs; pest control; preventive maintenance; filter changes; retrieving unreturned tools or appliances; preventing waste of utilities; exercising contractual lien; leaving notices; delivering, installing, or replacing appliances, furniture, equipment or security devices; removing or rekeying unauthorized locks or latches; removing unauthorized window coverings; removing unauthorized pets under paragraph 13; retrieving property owned or leased by former residents; inspections when imminent danger to person or property is reasonably suspect; entry by a law enforcement officer with a search warrant or arrest warrant; showing apartment to prospective residents ...; or

showing apartment to government inspectors, fire marshals, lenders, appraisers, prospective purchasers or insurance agents.

█ The conditions under which a landlord may enter a tenant's apartment, quoted above, at best reserve very limited control to the landlord. *Flynn v. Pan Am. Hotel Co.*, 143 Tex. 219, 183 S.W.2d 446, 451 (1944) (right to enter premises to make repairs and alterations is not a reservation of control over a part of the premises); *Jones v. Houston Aristocrat Apartments, Ltd.*, 572 S.W.2d 1, 3 (Tex.Civ.App.—Houston [1st Dist.] 1978, writ ref'd n.r.e.) (right to enter premises for purpose of making repairs gives effective control over item in need of repair); *Adames v. Housing Auth. of City of San Antonio*, 392 S.W.2d 806, 807–808 (Tex.Civ.App.—San Antonio 1965, writ ref'd n.r.e.) (owner/landlord not in possession of premises at time of injury had no control). Outside exercise of the limited rights reserved to the landlord in the lease, the owner's entry onto the leased premises would be unlawful. *See Hernandez v. Heldenfels*, 374 S.W.2d 196, 200 (Tex.1963) (propriety of entry depends on nature of occupant's possession).

Nothing in the record suggests the circumstances preceding the shooting gave Creely any right under the lease to disturb Erebia's privacy or to attempt to control Erebia's behavior when Erebia was inside unit seven, other than by warning him of possible eviction for rule and lease violations. Although the lease allows entry to an apartment when imminent danger to persons or property is reasonably suspected, Erebia's acts of misconduct do not give rise to a suspicion of imminent danger. Loud music, stomping, nocturnal re-arranging of furniture, and spinning out in the parking lot, while annoying, only threaten sleep, not personal safety.

### Foreseeability

█ De Leon contends Creely should have evicted Erebia when complaints continued after the warning of November 23, 1994. De Leon cites *Exxon* for the proposition that "the party with the 'power of control or expulsion' is in the best position to protect against the harm." 867 S.W.2d at 21. However, the supreme court tempered this statement with the qualifications that the landlord must have reason to know of or anticipate the danger of criminal conduct by a third person based on observation or past experience. *Exxon*, 867 S.W.2d at 21. Whatever duty a lessor may have to protect persons injured on the leased premises against the criminal acts of third parties, that duty does not arise in the absence of a foreseeable risk of harm. *Walker*, 924 S.W.2d at 377.

De Leon objected to Creely's offer of his own affidavit as summary judgment proof, arguing that it was "self-serving" and did not comport with the requirements of Texas Rule of Civil Procedure Rule 166a. Rule 166a(c) provides that testimonial evidence, such as an affidavit, by an interested witness is competent summary judgment evidence "if [it] is clear, positive and direct, otherwise credible and free from contradictions and inconsistencies, and could have been readily controverted." ·TEX.R. CIV. P. 166a(c).

If Creely had stated only that he had no knowledge before or after leasing unit seven to Erebia, and had acquired none since that would have lead him to believe Erebia was dangerous, the affidavit would be insufficient. *Brownlee v. Brownlee*, 665 S.W.2d 111, 112 (Tex.1984) (affidavit asserting only conclusions and no facts); *Truong v. Sears Roebuck & Co.*, 945 S.W.2d 178, 180 (Tex.App.—Houston [1st Dist.] 1997, no writ) (affidavit asserting only lack of knowledge and no reason to know of prior criminal acts). However, Creely provides facts which form the basis of his judgment of Erebia's good character at the time he leased the apartment. Erebia was employed, had a good credit history, and a respectable appearance. Creely notes that the only complaints he received about Erebia from De Leon concerned noise, though other tenants had complained that Erebia's guests were "spinning their wheels or digging out in the parking lot," adding to the noise problem. Creely had never personally witnessed nor been informed of any misconduct by Erebia that would have led him to believe Erebia was capable of violence.

█ De Leon could have endeavored to controvert Creely's affidavit statements.

**814**

However, De Leon did not attempt to show that Creely's criteria for accepting Erebia as a tenant (employed, good credit, decent appearance) were unreasonable. She presents neither argument nor evidence establishing why Creely failed to reasonably anticipate a future act of violence based on complaints of noise. She does not suggest that a criminal background check would have revealed a violent history. In her deposition, taken in October 1995, De Leon admitted that she had no evidence that Erebia had ever committed a violent act, other than that of December 24, 1993.

The warning letter to Erebia, dated November 23, 1993, enumerates the complaints that tenants and Creely had concerning Erebia. The letter informs Erebia of several problems, among them repeated complaints of loud music and other noise, not controlling his guests' behavior in the parking lot, and unauthorized overnight guests. The notice states, "If I have any additional complaints, I will have no choice but to go to the Judge and ask him to evict you."

De Leon contends, without explanation, that because the letter establishes Creely had knowledge of complaints prior to the shooting, it "negate[s] the requirement [that Creely's] affidavit be credible and free of inconsistencies" and "therefore creat[es] a fact issue." The letter contains notice of one lease or rule violation in addition to those Creely mentioned in his affidavit, but the misconduct complained of is not suggestive of potential violence. We see no controversion of the credibility or consistency of Creely's affidavit.

The evidence strongly suggests that the shooting was not intentional. De Leon testified that the two young men seen in the parking area immediately after the shooting were scared and jabbering, "It just went off, it just went off." There is no evidence to show when the shotgun was brought into the apartment or by whom.

We conclude Creely had no control of Erebia's apartment or over Erebia's person and, thus, had no common-law duty to De Leon.

We also conclude that Creely could not have foreseen Erebia's conduct or De Leon's injuries based on Erebia's annoying but nonviolent misconduct.

We affirm the trial court's order granting appellees' motion for summary judgment.