

# NUMBER 13-22-00279-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

---

KIMBERLY PICKENS, AS ADMINISTRATOR
FOR AND ON BEHALF OF THE ESTATE OF
RAJOLEI DEJAHL PICKENS, INDIVIDUALLY,
AND AS NEXT FRIEND OF WILLIAM PICKENS,
DIEGO AJANI PICKENS, ELIJAH SOL PICKENS,
JUDAH NIRVAN PICKENS, AND
ARUN GIL PICKENS,                                                Appellant,

v.

ROBERT J. HEWITT,                                                Appellee.

---

## ON APPEAL FROM THE 267TH DISTRICT COURT
## OF VICTORIA COUNTY, TEXAS

---

# MEMORANDUM OPINION ON REHEARING

**Before Justices Peña, Cron, and Fonseca**
**Memorandum Opinion on Rehearing by Justice Fonseca**

Appellant Kimberly Pickens, as administrator for and on behalf of the Estate of

Rajolei Dejahl Pickens, individually, and as next friend of William Pickens, Diego Ajani

Pickens, Elijah Sol Pickens, Judah Nirvan Pickens, and Arun Gil Pickens, minors, appeals the trial court's grant of summary judgment in favor of appellee Robert J. Hewitt. Appellant argues the trial court erred by three issues, however, we resolve this appeal via the dispositive issue of whether Hewitt owed a duty to appellant and Rajolei. We affirm.

## I. BACKGROUND

On March 21, 2019, Rajolei went to The Downtown Grill in Victoria to drink alcohol. After purchasing drinks, he allegedly became heavily intoxicated and, at some point, went outside to the patio. Rajolei told the bar's employees that he wanted to go home but the employees decided not to let him leave for his own safety. He was placed on a patio bench on the patio and left alone. He was found dead the next day, and his cause of death was determined to be acute alcohol intoxication.

Hewitt is the landowner, but Jamie Bowman owned and operated The Downtown Grill under a lease agreement with Hewitt at the time of Rajolei's death. Appellant filed suit against Hewitt, faulting The Downtown Grill's employees for overserving alcohol to Rajolei.[1] Appellant asserted claims for negligence and premises liability[2] against Hewitt alleging that overservice of alcohol was a dangerous condition and that Hewitt owed a duty to make this condition safe by evicting Bowman. Appellant relied on the following lease language for this assertion:

> [Bowman] agrees not to use the premises or the building situated thereon, or any part thereof, for any use or purpose in violation of any valid and applicable law, regulation or ordinance of the United States, the State of Texas or the City of Victoria, or other lawful authority having proper jurisdiction over the premises. [Bowman] shall not permit persons of known disreputable character to loiter in or about the premises and shall not knowingly permit incidents to occur therein or thereon which it had good

---

[1] The claims at issue in this appeal were severed from other claims against Bowman and The Downtown Grill.

[2] Appellant's Third Amended Petition, filed after Hewitt filed his motion for summary judgment, added the premises liability cause of action.

reason to believe constitute violations of existing law. Violations of the provisions of this paragraph shall constitute good reason for termination of this lease agreement by [Hewitt].

Based on this language, appellant contended Hewitt had a duty to evict Bowman and The Downtown Grill because they had allegedly repeatedly violated the law multiple ways during their lease and Hewitt was aware of these violations. Thus, appellant argued Hewitt was a proximate cause of Rajolei's injuries. Hewitt generally denied these allegations.

Hewitt filed a combined motion for summary judgment and no evidence summary judgment—which he supplemented upon appellant's filing her Third Amended Petition— arguing that appellant lacked standing to assert any provision of the lease as a basis for liability and was not intended as a third-party beneficiary of the lease. Further, Hewitt asserted that appellant failed to present evidence that Hewitt owed a duty to Rajolei. Appellant responded by presenting, in part, an expert report detailing dozens of reports of criminal activity at The Downtown Grill, including several instances of intoxicated individuals. The report faulted Hewitt for failing to enforce the above-quoted lease provision and alleged that the prior criminal activity constituted a dangerous condition which led to Rajolei's death, supporting a premises liability theory. Appellant also argued that privity of contract was not required to support the premises liability theory.

The trial court held a hearing on the motions on March 15, 2022. There, Hewitt argued that there was no intent in the lease provision to create a third-party beneficiary and that appellant lacked standing as a result. Hewitt further argued all cases cited by appellant were distinguishable because the landlord maintained control over the property in those cases and did not do so here. Appellant argued that the claims were not based on a third-party beneficiary theory but instead over an alleged duty created in Hewitt based on a "right to reoccupy the premise" if a lessee committed a criminal act. Appellant

3

further argued that it was foreseeable on Hewitt's part that the bar would overserve alcohol and that Hewitt had a duty to evict The Downtown Grill because of a history of overservice. The trial court granted both of Hewitt's motions for summary judgment, severed the claims, and confirmed, after this Court requested, that the order was final and appealable.

A previous panel of this Court issued a memorandum opinion on June 27, 2024. *Pickens v. Hewitt*, No. 13-22-00279-CV, 2024 WL 3199145 (Tex. App.—Corpus Christi–Edinburg June 27, 2024) (mem. op.) (affirming the summary judgment as to appellant's negligence action but reversing the remainder), *withdrawn* (Feb. 6, 2025). However, on February 6, 2025, we granted Hewitt's motion for rehearing and withdrew the memorandum opinion and judgment. This matter was then resubmitted following oral argument on March 18, 2025.

## II.  DISCUSSION

As a preliminary matter, we note that the trial court's order granting Hewitt's motion for summary judgment effectively dismissed the two causes of action asserted against Hewitt in appellant's Third Amended Petition: (1) negligence in failing to evict, and (2) premises liability. To the extent appellant has attempted to address the effect of the trial court's order on the negligence cause of action, and following a liberal reading of appellant's brief, we find that the issue has been inadequately briefed as it applies to the negligence claim. *See* TEX. R. APP. P. 38.1(i). Therefore, our review on appeal focuses on the effect of the trial court's order on appellant's premises liability cause of action.

### A.  Standing

As a preliminary issue, we must first determine whether appellant had standing to file suit. *See generally*, *Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 443

4

(Tex. 1993) ("Subject matter jurisdiction is essential to the authority of a court to decide. Standing is implicit in the concept of subject matter jurisdiction."); *see also In re K.S.*, No. 2021 WL 317656, at *3 (Tex. App.—Corpus Christi–Edinburg Jan. 28, 2021, no pet.) (mem. op.). Appellant's brief argues that she did not need to be a third-party beneficiary to have standing to file a premises liability claim against Hewitt. "To establish standing to assert a breach of contract cause of action, a party must prove its privity to the agreement or that it is a third-party beneficiary." *Maddox v. Vantage Energy, LLC*, 361 S.W.3d 752, 756 (Tex. App.—Fort Worth 2012, pet. denied). Appellant does not bring a breach of contract cause of action so to the extent that the trial court granted summary judgment due to appellant lacking standing as a third-party beneficiary, we disagree with such finding. However, Hewiitt's "standing" argument appears to be abandoned on appeal and any argument about "standing" as it were appears to be addressed through the lens of whether Hewitt had a duty to appellant.

Therefore, we resolve the rest of the matter accordingly and proceed to consider appellant's second issue, the only remaining—and dispositive—issue, which is whether Hewitt had a duty to protect Rajolei against the criminal acts of third parties under a premises liability cause of action. [3] As explained below, we find no such duty exists in this case, and, therefore, we affirm.

B.    **Standard of Review**

We review an order granting summary judgment de novo. *Scripps NP Operating, LLC v. Carter*, 573 S.W.3d 781, 790 (Tex. 2019). We must consider the evidence in the

---

[3] Moreover, any argument regarding whether the Estate itself is a legal entity with capacity to sue appears to have been abandoned by Hewitt. Furthermore, appellant has filed suit in her capacity as administrator of the Estate and, reading the pleadings liberally, there seem to be no causes of action filed by the Estate without being presented through its administrator.

light most favorable to the nonmovant, crediting evidence favorable to the nonmovant if a reasonable factfinder could do so and disregarding contrary evidence unless a reasonable factfinder could not. *Buck v. Palmer*, 381 S.W.3d 525, 527 (Tex. 2012) (per curiam); *Mann Frankfort Stein & Lipp Advisors, Inc v. Fielding*, 289 S.W.3d 844, 848 (Tex. 2009). We indulge every reasonable inference for the nonmovant and resolve any doubts in his favor. *20801, Inc. v. Parker*, 248 S.W.3d 392, 399 (Tex. 2008).

A movant for summary judgment has the burden to establish that no genuine issue of a material fact exists and that it is entitled to judgment as a matter of law. TEX. R. CIV. P. 166a(c); *Janaki v. C.H. Wilkinson Physician Network*, 624 S.W.3d 623, 627 (Tex. App.—Corpus Christi–Edinburg 2021, no pet.). If the non-movant produces more than a scintilla of evidence to raise a fact issue on the challenged elements, then summary judgment is improper. *Amedisys, Inc. v. Kingwood Home Health Care, LLC*, 437 S.W.3d 507, 511 (Tex. 2014); *King Ranch, Inc. v. Chapman*, 118 S.W.3d 742, 751 (Tex. 2003). "More than a scintilla of evidence exists when the evidence 'rises to a level that would enable reasonable and fair-minded people to differ in their conclusions.'" *King Ranch, Inc.*, 118 S.W.3d at 751 (quoting *Merrell Dow Pharms. Inc. v. Havner*, 953 S.W.2d 706, 711 (Tex. 1997)). Less than a scintilla of evidence exists when the evidence is "so weak as to do no more than create a mere surmise or suspicion" of a fact. *Ford Motor Co. v. Ridgway*, 135 S.W.3d 598, 601 (Tex. 2004).

We treat a no evidence summary judgment as a pretrial directed verdict. *See Mack Trucks, Inc. v. Tamez*, 206 S.W.3d 572, 581 (Tex. 2006). Thus, once filed, "the burden shifts to the nonmoving party to present evidence raising an issue of material fact as to the elements specified in the motion." *Id.* at 582; *see* TEX. R. CIV. P. 166a(i). "[W]e review the evidence in the light most favorable to the non-movant, disregarding all contrary

6

evidence and inferences." *King Ranch, Inc.*, 118 S.W.3d at 751 (citing *Merrell Dow Pharms.*, 953 S.W.2d at 711).

## C. Hewitt's Duty in Premises Liability

Appellant's remaining claim at issue sounds in a premises liability theory. This is distinguished from a negligent activity claim because of the "distinct duty analyses" as a negligent activity case "encompasses a malfeasance theory based on affirmative, contemporaneous conduct by the owner that caused the injury, while premises liability encompasses a nonfeasance theory based on the owner's failure to take measures to make the property safe." *United Scaffolding, Inc. v. Levine*, 537 S.W.3d 463, 471 (Tex. 2017) (quoting *Del Lago Partners, Inc. v. Smith*, 307 S.W.3d 762, 776 (Tex. 2010)). According to appellant, her claim involves "a nonfeasance theory based on the owner's failure to take measures to make the property safe." Thus, to prevail, appellant had to prove four elements:

> (1) the owner or occupier had actual or constructive knowledge of a condition on the premises; (2) the condition posed an unreasonable risk of harm; (3) the owner or occupier did not exercise reasonable care to reduce or eliminate the risk; and (4) the owner or occupier's failure to use such care proximately caused the plaintiff's injury.

*Henkel v. Norman*, 441 S.W.3d 249, 251–52 (Tex. 2014) (per curiam); *see also Heredia v. Wal-Mart Stores, Tex., LLC*, No. 13-16-00129-CV, 2017 WL 3184458, at *2 (Tex. App.—Corpus Christi–Edinburg July 27, 2017, pet. denied) (mem. op.). Our analysis will focus on Hewitt's duty or lack thereof, which is an implied element of a premises liability claim. *See Walker v. Harris*, 924 S.W.2d 375, 377 (Tex. 1996).

### i. Duty to Protect from Criminal Activity of Third Party

Appellant argues that The Downtown Grill committed criminal acts by overserving alcohol to its patrons, which imposed a duty on Hewitt to protect others by evicting The

7

Downtown Grill. According to appellant, Hewitt's failure to evict The Downtown Grill after having constructive knowledge of the "condition"—that is, the supposed ongoing constant criminal activity—proximately caused Rajolei's injuries. As we explain below, appellant's claim on this "nonfeasance theory" fails as a matter of law.

"As a general rule, a person has no legal duty to protect another from the criminal acts of a third person or control the conduct of another." *Id.* (citations omitted). "Similarly, a landowner has no duty to prevent criminal acts of third parties who are not under the landowner's supervision or control." *Id.* (citing *Exxon Corp. v. Tidwell,* 867 S.W.2d 19, 21 (Tex.1993); *El Chico Corp. v. Poole,* 732 S.W.2d 306, 313 (Tex. 1987)). Nonetheless, Texas courts recognize certain exceptions to the general no-duty rule. *See Austin v. Kroger Tex., L.P.*, 465 S.W.3d 193, 206 (Tex. 2015).

Specifically, as is relevant to this case, Texas has recognized that "[o]ne *who controls* the premises does have a duty to use ordinary care to protect invitees from criminal acts of third parties if he knows or has reason to know of an unreasonable and foreseeable risk of harm to the invitee." *Lefmark Mgmt. Co. v. Old*, 946 S.W.2d 52, 53 (Tex. 1997) (emphasis added). "The foreseeability of an unreasonable risk of criminal conduct is a prerequisite to imposing a duty of care on *a person who owns or controls premises* to protect others on the property from the risk." *Dickinson Arms-REO, L.P. v. Campbell*, 4 S.W.3d 333, 346 (Tex. App.—Houston [1st Dist.] 1999, pet. denied) (emphasis added) (citing *Timberwalk Apartments, Partners, Inc. v. Cain*, 972 S.W.2d 749, 756 (Tex. 1998)). This exception applies to landlords who retain "control over the security and safety of the premises." *Timberwalk Apartments*, 972 S.W.2d at 756 (quoting *Centeq Realty, Inc. v. Siegler*, 899 S.W.2d 195, 197 (Tex. 1995)).

Of import to this appeal, "this duty is commensurate with the right of control over the property." *De Leon v. Creely*, 972 S.W.2d 808, 811 (Tex. App.—Corpus Christi–Edinburg 1998, no pet.). "Ownership of property is not synonymous with control." *Id*. at 812. Rather, the occupier of the premises is presumed to be in control. *Id*. A lease grants a tenant exclusive possession of the premises against the owner. *H.E.Y. Tr. v. Popcorn Express Co.*, 35 S.W.3d 55, 58 (Tex. App.—Houston [14th Dist.] 2000, pet. denied); *see also Abest Holdings, LLC v. Fort Worth Mar-G, Ltd.*, No. 10-18-00161-CV, 2021 WL 2252351, at *7 (Tex. App.—Waco June 2, 2021, no pet.) (mem. op.). Even if the landlord retains limited right to enter the premises to make repairs, this still does not give the landlord control over the property. *See De Leon*, 972 S.W.2d at 813. "When the lessor has no control over the premises, the lessor has no liability for injuries stemming from leased premises within the control of a tenant." *Levesque v. Wilkens*, 57 S.W.3d 499, 505 (Tex. App—Houston [14th Dist.] 2001, no pet.) (citing *Johnson Cnty. Sheriff's Posse, Inc. v. Endsley*, 926 S.W.2d 284, 285 (Tex. 1996)).

Here, Hewitt signed a lease with The Downtown Grill granting the bar exclusive control over the premises. The record does not indicate Hewitt maintained any type of control over the property or preserved any ability to dictate to The Downtown Grill on how to run the premises. Therefore, Hewitt cannot be said to have maintained possession and has no general duty to prevent criminal acts against patrons at the bar. *See Walker*, 924 S.W.2d at 377. The Downtown Grill had exclusive possession of the premises against Hewitt and thus any duty to Rajolei stemming from a dangerous condition on the premises was owed solely by it, not Hewitt. *See H.E.Y. Tr.*, 35 S.W.3d at 58; *see also Abest Holdings, LLC*, 2021 WL 2252351, at *7. Hewitt has no liability for injuries stemming from The Downtown Grill's control of the premises. *See Levesque*, 57 S.W.3d at 505.

9

Appellant argues that Hewitt maintained control by virtue of the lease provision that permits Hewitt to evict The Downtown Grill if they commit crimes on the premises. Per appellant, The Downtown Grill repeatedly committed the crime of overservice of alcohol. *See* TEX. ALCO. BEV. CODE § 101.63 (providing it is a Class A misdemeanor to sell or deliver, with criminal negligence, an alcoholic beverage to an intoxicated person). Regardless of the veracity of that claim, appellant cites no authority compelling a finding that Hewitt maintained control over the premises due to that lease provision. In fact, appellant's cited authority seems to say the opposite.

In *De Leon*, the tenant De Leon argued that the landowner and property manager should have evicted another tenant, Erebia, due to repeated disturbances that culminated in a shotgun blast from Erebia's apartment hitting De Leon. 972 S.W.2d at 810. De Leon argued that the landowner maintained the power of expulsion over Erebia and thus was best positioned to protect her from harm. *Id.* at 813. While these facts are already distinguishable from the present situation because the landowner both owned and managed the property, our Court concluded that because the landowner did not have control of Erebia's apartment or Erebia's person, there was "no common-law duty" to evict Erebia. *Id.* at 814.

Here, Hewitt did not control the bar in any sense or interact with any of its customers. While the lease provision allowed Hewitt to evict the tenant, our Court has already found that, even where the landowner is directly managing the property, it has no "duty" to evict its own tenant if it doesn't have direct control over the apartment at issue. *See id.* Hewitt's alleged control of The Downtown Grill is even more attenuated than that in *De Leon* because he had no management of the property at all. Having the power to evict alone does not create the possessory interest if Hewitt does not otherwise access

10

any control over the premises. *See id*. "The reservation of a right to re-entry . . . does not amount to a retention of control." *Jensen v. Sw. Rodeo, L.P.*, 350 S.W.3d 755, 758 (Tex. App.—Dallas 2011, no pet.). Further, appellant's attempt to position The Downtown Grill as a third-party criminal actor and Rajolei as Hewitt's invitee is not tenable because Hewitt did not exercise control over the premises, nor was Rajolei coming to the property for Hewitt's benefit.[4] Accordingly, the lease provision at issue does not create a duty on Hewitt's part.

### ii. Contractual Right to Evict

Having shown appellant cannot prevail on her premises liability claim based on precedent allowing recovery under a nonfeasance theory, we now turn to the effect of Hewitt's contractual right to terminate the lease on his duty to Rajolei vis-à-vis Hewitt's control of the property as a landlord. Appellant argues that Hewitt owed a general duty to third parties to evict the tenant with control of his property via the lease because Hewitt maintained the right to evict. Appellant has not cited, nor have we found, any precedent that could support finding that the retention of a right under a contract imposes a duty in tort. The caselaw makes clear that a contract must clearly and fully spell out the conferring of a direct benefit in contract upon a third party. *See S. Tex. Water Auth. v. Lomas*, 223 S.W.3d 304, 306 (Tex. 2007) (citing *MCI Telecomms. Corp. v. Tex. Utils. Elec. Co.,* 995 S.W.2d 647, 651 (Tex. 1999)).

To the extent appellant asks us to find such a duty should exist, we decline the invitation. We find creation of such a duty would run contrary to the well-established limitation that only those who maintain control over a premises should have responsibility

---

[4] "An invitee is a person who enters the premises of another at the express or implied invitation of the owner or occupier for the parties' mutual benefit." *Diez v. Alaska Structures, Inc.*, 455 S.W.3d 737, 742 (Tex. App.—El Paso 2015, no pet.).

to make it safe against criminal acts. *See Dickinson Arms-REO*, 4 S.W.3d at 346. It would not be tenable that owners who lease their property and cede control to a tenant owe a broad duty to the invitees of another party as it would essentially commandeer the landlord-tenant relationship into one where a landlord must always exercise some control over the property and ruin the freedom of contract that parties in Texas enjoy.

Because we find Hewitt has no duty to evict and exercised no control over the premises, we need not examine whether the risk of harm was foreseeable. *See* TEX. R. APP. P. 47.1. The trial court did not err in granting summary judgment in favor of Hewit.

### III. CONCLUSION

We affirm the trial court's judgment.

YSMAEL D. FONSECA
Justice

Delivered and filed on the
29th day of January, 2026.