**B. & B. VENDING COMPANY, Appellant,**

**v.**

**Leon DUCHARME et al., Appellees.**

**No. 15856.**

Court of Civil Appeals of Texas.

Dallas.

July 28, 1961.

Rehearing Denied Oct. 6, 1961.

Biggers, Baker, Lloyd & Carver, Spencer Carver, Dallas, for appellant.

Finklea & Finklea, William B. Finklea, Dallas, for appellees.

### DIXON, Chief Justice.

Appellants R. B. Williams and B. H. Williams, partners doing business as B & B Vending Company, sought a permanent injunction to restrain appellees Leon Ducharme, Jim Solomon and E. L. Certain from violating an alleged exclusive concession lease whereby appellants had placed three of their coin operated vending machines on the premises of the "Crown Cafe" at 4939 Columbia Avenue in the City of Dallas, Texas.

The written contract was executed November 5, 1957 by Frank Pappas and Jim Solomon as lessors and B & B Vending Company lessee. On May 5, 1959 B & B Vending Company filed the contract with the County Clerk for recording in the Deed Records of Dallas County.

Pappas evidently dropped out of the picture somewhere along the line, for when the present controversy arose, Jim Solomon appears to have been the sole owner and operator of the business known as "Crown Cafe".

We quote from the contract in controversy:

"Lessor does hereby lease and demise unto the said Lessee the following described property, to-wit lying and being situated in the City of Dallas and County of Dallas, State of Texas, and being 4939 Columbia Avenue, * * * for the term of five (5) years beginning the 5th day of November 1957 and ending the 5th day of November 1962, to be used as an Exclusive Concession Lease by Lessee for the purpose of installing and operating legal coin operated equipment upon the conditions and covenants as follows: 1: That the Lessee shall pay a percentage of the gross proceeds received through weekly collections from the operation of said legal coin operated equipment to Lessor at Lessor's place of business above described. That this lease is an Exclusive Concession Lease giving and granting to the Lessee the right, privilege and option of installing and operating all legal coin operated electrical phonographs, amusement devices, and cigarette machines, on the above described premises * * *. 4: It is expressly understood that in the event that the Lessor herein shall not be the owner of the premises herein leased and shall hold a lease of the property of which the demised premises are a part, then this sublease is and shall remain subject to all of the terms and conditions of such existing lease to the Lessor so far as they shall be applicable to the premises herein leased.

* * * 9: That the rights granted herein to the Lessee shall be binding upon the heirs, successors and assigns of the said Lessor and no change of division in ownership of the land or premises hereinbefore described however accomplished shall operate to enlarge the obligations or diminish the rights of the Lessee and the said Lessor shall notify in writing the said Lessee of any sale, conveyance or transfer of the hereinabove described property."

Before the expiration date of the contract Solomon sold his cafe business to Leon Ducharme. The contract of sale dated April 6, 1960 by its express terms called for consummation of the contract within 30 days from the date of its execution provided certain requirements were met by the purchaser, Ducharme. The agreement was subject to the procuring by Ducharme of a new lease on the real property on which the "Crown Cafe" was operated and the release of Jim Solomon on the old outstanding lease on the premises. Otherwise, the contract was to be considered null and void. Ducharme met these requirements and became the owner and operator of the business known as "Crown Cafe" located at 4939 Columbia Avenue.

It was soon after this change of the ownership that the present controversy arose. Ducharme, the new owner of the cafe business, preferred to have the vending machines of E. L. Certain, appellants' competitor, placed in the cafe. To that end he directed appellants to remove their machines. Appellants resisted, claiming that they had a valid lease contract which still had about two years to run, and that Ducharme, as purchaser of the cafe business, was bound by the terms of the contract the same as Solomon.

The case was tried before the court without the intervention of a jury. Judgment was entered against appellant, denying the permanent injunction. We are of the opinion that the trial court correctly denied the injunction.

In four points on appeal appellants allege that the court erred (1) in not entering judgment declaring that, under the terms of the contract and the possession of appellants thereunder, the contract was binding on appellees; (2) in not enjoining Ducharme and Certain from interference with the quiet enjoyment of the premises by appellants; (3) in finding Ducharme and Certain did not conspire together to interfere with appellants' quiet enjoyment; and (4) in finding that Bob Crow was the owner of the real property on which the restaurant was located, as there was no evidence to support such finding.

Appellants contend that their exclusive concession lease is a conveyance of an interest in lands and tenements within the meaning of Art. 1288 and 1289, Vernon's Ann.Civ.St., and that the effect of its recording in the Deed Records was to give Ducharme constructive notice of appellants' claim pursuant to Art. 6627 V.A.C.S.

■ The exclusive concession lease contract between Pappas and Solomon as lessors and B & B Vending Company, as lessee, is in many respects couched in the language of a lease contract of the whole real property known as 4939 Columbia Avenue. But a study of the evidence as to how the parties themselves interpreted and performed their contract, plainly shows that it was not so intended by either the lessor or lessee.

The only witness in behalf of appellants was their general manager, Gordon Youle, who testified it was he who negotiated the contract. We quote from his testimony:

"Q. Do you know where these machines are located within the premises? A. Yes, I do.

"Q. Does your company have a key to the premises? A. No.

"Q. Does your company have any particular part of the premises that is allocated to them that they have a right to exclusive possession of? A. Any

part of the premises—wherever you want to put coin operated equipment.

"Q. Is there any particular part of those premises out there that is roped off or segregated from the rest of the premises which you alone have access to? A. No.

"Q. Isn't it true that actually these vending machines can be moved around within the premises to suit the owner, can they not? A. Right.

"Q. You don't care where the pin-balls—the shuffle alley is or the cigarette machine, and I'm sure that customarily they are moved around occasionally to suit their convenience, aren't they? A. Right—yes.

"Q. Do your employees ever go into the premises when the premises are not open for business? A. No, they don't have a key to it, how could they get in?

"Q. Yes, sir, and about, I believe, once a week one of your employees would go out and, I believe in the trade you call it 'to rob' the machines, don't you? A. Right.

"Q. At any other time, would there be occasion for you to be there? A. No, not unless we had a service call, a maintenance call. * * *

"Q. Now, Mr. Youle, is there any kind of a sign on these premises to the effect that B & B Vending Company claims any character of lease or sub-lease to these premises? A. Is there a sign, did you say?

"Q. Yes, sir? A. No, it's on file in the records—at the Records Building. * * *

"Q. Now, is there anything different about the appearance of a vending machine in a place of business where you have a written contract as opposed to a place of business where you do not have a written contract? A. No.

"Q. They're just vending machines sitting there? A. Yes."

It is evident from the above quoted testimony that appellants did not obtain and did not claim the right of exclusive possession of the premises known as 4939 Columbia Avenue. In Brown v. Johnson, 118 Tex. 143, 12 S.W.2d 543, 545 it is said: "To create the relation[ship] of landlord and tenant, no particular words are necessary, but it is indispensable that it should appear to have been the intention of one party to dispossess himself of the premises and of the other [party] to occupy them." See also Mallam v. Trans-Texas Airways, Tex. Civ.App., 227 S.W.2d 344; Wilson v. Wagner, Tex.Civ.App., 211 S.W.2d 241; Philadelphia Trust Co. v. Johnson, Tex.Civ.App., 257 S.W. 280; Wash-O-Matic Laundry Co. v. 621 Lefferts Ave. Corp., 191 Misc. 884, 82 N.Y.S.2d 572; Halpern v. Silver, 187 Misc. 1023, 65 N.Y.S.2d 336; Kaypar Corp. v. Fosterport Realty Corp., 1 Misc. 2d 469, 69 N.Y.S.2d 313.

The three cases above cited from New York Supplement, Second Series, discuss both the necessity of possession and the difference between a lease on real estate and a mere license to go upon premises for a particular purpose. We think the holdings there are applicable here, especially in the light of paragraph No. 1 of the contract between Solomon and B & B Vending Company.

In the instant case it is not disputed that Jim Solomon was the owner and operator of the business known as the "Crown Cafe" at 4939 Columbia Avenue, and that he retained possession of the premises following execution of the exclusive lease concession contract with appellants. He agreed to let appellants install a coin operated music machine, a cigarette machine, and a shuffle board. These machines were not placed in definitely designated part of the premises. They could be moved around at the will of Solomon. Appellants did not have a key to the premises. They did not have an employee who stayed at the place of

business or who was in charge of the concession of any kind. Their agent appeared once a week to "rob" the machines. The proceeds were split between appellants and Solomon.

For another reason we think the contract between appellants and Pappas and Solomon cannot be upheld as a valid lease contract binding on Solomon's purchaser, Ducharme. The court found that Bob Crow was the owner of the premises in question. Solomon was his tenant. There is no showing that Bob Crow as landlord ever agreed for Solomon to sublet the premises or any part thereof to appellants or anyone else. Under our law such consent was necessary. Art. 5237, V.A.C.S.; Brown v. Johnson, 118 Tex. 143, 12 S.W.2d 543.

Since appellants' sublease is derived through Solomon, they cannot effectively assert its binding effect on Crow, the owner of the property, and repudiate Crow's right to lease to Ducharme unless they show that Crow had consented to Solomon's subletting to appellants. It is to be remembered that Ducharme's contract of purchase from Solomon obligated him to obtain a new lease of the premises direct from Crow, the owner, and to obtain a release from Crow to Solomon under the old lease. Ducharme fulfilled these requirements.

Appellants say that there is no evidence that Crow was the owner of the property. This contention is without merit. There is in evidence the contract between Solomon and Ducharme requiring Ducharme to obtain a new lease from the landlord supplanting Solomon's lease. There is also in the evidence a written contract with Crow as landlord leasing the premises to Ducharme as tenant. There is no privity of contract shown between appellants and Crow, the owner, which would give life to appellants' alleged sublease from Solomon.

The evidence does not make it clear whether Crow was owner of the fee title to the real estate; but it does support a finding that Crow was the owner of an interest in the real estate superior to any interest claimed by Solomon, Ducharme or appellants.

Ducharme did not examine the deed records, but he was not under any duty to do so. Under the circumstances he was not bound by the terms of the contract relied upon by appellants even if he had received actual or constructive notice of its contents. The evidence shows that he knew the vending machines on the premises belonged to appellants, but he did not know the terms of the contract between Solomon and appellants.

The testimony shows that Ducharme and Certain wished to do business with each other to the exclusion of appellants. However, they were not guilty of conspiracy, for their actions and purposes were neither illegal nor wrongful.

Appellants' four points on appeal are overruled.

The judgment of the trial court is affirmed.