H.E.Y. TRUST and Vernon R. Young, Jr., Trustee, Appellants,

v.

POPCORN EXPRESS CO., INC., Appellee.

No. 14–99–00279–CV.

Court of Appeals of Texas, Houston (14th Dist.).

Aug. 17, 2000.

Rehearing Overruled Jan. 25, 2001.

H. Miles Cohn, Houston, for appellants.

Joe C. Holzer, Jerald David Mize, Houston, for appellees.

Panel consists of Justices ANDERSON, HUDSON and FOWLER.

## O P I N I O N

JOHN S. ANDERSON, Justice.

Appellants, H.E.Y. Trust (Trust) and Vernon Young, Jr. (Young), appeal the trial court's judgment in favor of appellee, Popcorn Express Co., Inc. In a bench trial, appellants sought to recover unpaid brokerage fees earned by appellants' negotiation of a concession contract on behalf of the appellee. The trial court, however, refused to award the unpaid fees and ordered appellants to refund previously paid fees to the appellees. Finding in favor of appellants, we reverse and remand to the trial court for entry of judgment in accordance with this opinion and the parties' stipulations.

### I.

**Factual and Procedural Background**

The parties stipulate that on January 1, 1992, the Trust and Popcorn Express entered into a brokerage agreement by which the Trust would negotiate a contract with the City of Houston, granting Popcorn Express a food and beverage concession at Houston's Intercontinental Airport.[1] Significantly, the brokerage agreement begins:

> This agreement dated January 1, 1992, is made between Vernon R. Young, Jr. as an employee of H.E.Y. Trust ...

---

**1.** Because the brokerage agreement was entered into on January 1, 1992, we will only apply the Real Estate License Act as it was in effect on that date.

referred to as Broker and Popcorn Express Co., Inc.

The terms of the agreement dictate that if the broker finalizes the arrangements and Popcorn Express is granted the concession, Popcorn Express will pay five percent, annually, of all its gross receipts from its airport food and beverage concession. The brokerage agreement expires by its own terms on June 30, 2007. Popcorn Express' authorized official and Vernon Young, Jr. signed the agreement.

After receiving its concession,[2] Popcorn Express paid the Trust $40,972.00 on December 30, 1994, and $49,000.00 on December 30, 1995, as "estimated" commissions earned during 1994 and 1995. However, Popcorn Express refused to make any further payments to the Trust and also refused to provide any record of gross receipts as required by the brokerage agreement. The Trust and Young brought suit against Popcorn Express in 1997, seeking a recovery of five percent of Popcorn Express's gross receipts for the years 1993 though 1997.

At trial, Popcorn Express asserted, as a defense to its debt, that the Trust could not recover the fees because: (1) the Texas Real Estate License Act (RELA), which prohibits suits to collect fees for certain real estate services by persons or entities not licensed under the Act, applies to this agreement, and (2) under the RELA, the Trust was not a duly licensed broker when it entered into the agreement. Therefore, appellee argues, the RELA bars the Trust's claim because it did not satisfy the licensing requirements imposed by the Act. Further, Popcorn Express counterclaimed against the Trust for the broker's fees previously paid in the amount of $89,972.21. The trial court found in favor of Popcorn Express, denying the Trust's claim and awarding Popcorn Express the full amount of its counterclaim. The Trust and Young brought this appeal, presenting these issues: (1) is a concession agreement a sale or lease of real estate under the RELA, and (2) did the RELA apply to trusts in 1992 when the brokerage agreement was signed.

## II.

### The Texas Real Estate License Act

In appellants' first point of error it is argued that the RELA does not apply to the facts of this case because the Purveyor's Contract at issue here does not concern the sale or lease of real estate. We agree.

In 1992, the RELA stated:

It is unlawful for a person to act in the capacity of, engage in the business of, or advertise or hold himself out as engaging in or conducting the business of a real estate broker ... within this state without first obtaining a real estate license from the Texas Real Estate Commission.

Tex.Rev.Civ. Stat. Ann. Art. 6573a, § 1(b) (Vernon 1991).

For purposes of our analysis, the RELA defined a "real estate broker" as:

[A] person who, for another person and for a fee, commission, or other valuable consideration, or with the intention or in the expectation or on the promise of receiving or collecting a fee, commission, or other valuable consideration from another person *negotiates or attempts to negotiate the listing, sale, ex-*

---

**2.** Popcorn Express and the City of Houston entered into a "Purveyor Contract" on April 24, 1990. We find it puzzling that the Purveyor Contract date precedes, by over one and a half years, the date of the brokerage agreement. Further compounding this enigma, Section 11.2 of the Purveyor Contract specifically provides that the "Managing Agent and Purveyor warrant that each has had no dealings with any broker or Agent in connection with this Contract." What really concerns the court, however, is that the foregoing facts, obvious on the face of the documents that lie at the core of the dispute in this case, were never adverted to by the litigants. Nevertheless, inasmuch as no issue has been raised regarding these matters, we need not address them.

*change, purchase, rental, or leasing of real estate.*

*Id.* at § 2(2)(C)(emphasis added).

Thus, by the express language of the statute, a "real estate" license is only required for those persons who are negotiating a lease or other transaction involving "real estate." Accordingly, one engaging in acts which fall outside of the acts specified in the definition of "real estate broker" need not have a license to perform such services. Here, the parties limit their dispute to whether the concession agreement may be characterized as a *lease* of real estate. We hold the Purveyor's Contract, however, is not a contract for the lease of real estate.

A lease grants a tenant exclusive possession of the premises as against the owner. *See Brown v. Johnson,* 118 Tex. 143, 12 S.W.2d 543 (1929) (essential quality in lease is it should appear to have been intention of one party to dispossess himself of premises and of other to occupy them); *see also De Leon v. Creely,* 972 S.W.2d 808, 812 (Tex.App.—Corpus Christi 1998, no pet.) (citing *Holcombe v. Lorino,* 124 Tex. 446, 79 S.W.2d 307, 310 (1935) for proposition that lease is grant of an estate in land for a limited term, with conditions attached).

A "real property license", however, is "a privilege to go on premises for a certain purpose, but does not operate to confer on, or vest in, licensee any title, interest or estate in such property." *See* BLACK'S LAW DICTIONARY 920 (6th ed.1990).[3] Concession agreements are generally construed to create only licenses. *See Qualls v. Lake Berryessa Enterprises Inc.,* 76 Cal.App.4th 1277, 91 Cal.Rptr.2d 143, 147 ([1 st Dist.] 1999).

Here, it is clear that Popcorn Express acquired a license rather than a lease in its contract with the City of Houston. By signing the "Purveyor Contract," Popcorn Express covenanted to "use the 'Contracted Premises' only for the sale of popcorn and beverages." This contract, limiting Popcorn Express's "right to do certain things upon the property of another," does not constitute a lease which would grant the lessee the right to possess the land "for all purposes" not prohibited by the contract. *See Lee v. North Dakota Park Service,* 262 N.W.2d 467, 470–71 (N.D.1977). As a license, this contract is analogous to those Texas cases relating to the contractual rights of owners of coin-operated vending machines. *See B. & B. Vending Co. v. Ducharme,* 349 S.W.2d 630 (Tex.Civ.App.—Dallas 1961, writ ref'd n.r.e.); *see also Hancock v. Bradshaw,* 350 S.W.2d 955 (Tex.Civ.App.—Amarillo 1961, no writ).

In *Ducharme,* the court characterized the vending machine and shuffleboard concession as a license rather than a lease. *See* 349 S.W.2d at 633. Although the contract purported to "lease" the premises to the vendor, the court held the intention of one party "to dispossess himself of the premises and of the other party to occupy them" was lacking. *See id.* at 633. Thus, there was only a license to go upon premises for a particular purpose which did not convey any interest in land. *See id.* A similar analysis lead the Amarillo court to hold that an "exclusive concession lease" constituted a license. *See Hancock,* 350 S.W.2d at 957. In *Hancock,* the court held that although the contract mentioned the word "lease," it was, in actuality, a license to place cigarette and juke box machines on the owner's premises. *See id.* We agree with the reasoning of both these cases, and hold that, as a matter of law,

---

**3.** Appellee argues the agreement at issue constitutes a lease of real estate because the agreement states it is "a contract of real property in a shopping area of an airport." We disagree that this stipulation converts what is in all respects a license into a lease. That this contract concerns "real property" does not demonstrate that it is a lease of real estate. Rather, we hold that this language merely identifies that the type of license at issue is a "real property" license.

the contract negotiated by Young for Popcorn Express creates a license. Because the Trust's negotiation of the contract granting Popcorn Express this license was not a negotiation of a "listing, sale, exchange, purchase, rental, or leasing of real estate," the licensing requirements for real estate brokers under the RELA are inapplicable to the Trust's services. Accordingly, we sustain appellants' first point of error.

## III.

### Is a Trust a "Person" under the RELA?

Assuming, arguendo, that the concession license constituted a "lease" of real property and that the RELA does apply, we still find the RELA inapplicable to the facts of this case. In their second point of error, appellants argue that because the Trust was not a "person" under the RELA, the Trust was not required to be licensed under the applicable RELA licensing requirements. In that respect, this case typifies the confusion that results when statutes evolve in response to case law, casting wider nets than originally contemplated by the legislature. As noted above, in January 1992, the law under the RELA was:

> It is unlawful for a *person* to act in the capacity of, engage in the business of, or advertise or hold himself out as engaging in or conducting the business of a real estate broker or real estate salesman within this state without first obtaining a real estate license from the Texas Real Estate Commission.

Tex.Rev.Civ. Stat. Ann. Art. 6573a, § 1(b) (Vernon 1991) (emphasis added).

The RELA further stated that:

> A *person* may not bring or maintain an action for the collection of compensation for the performance in this state of an act [restricted to licensed real estate brokers] without alleging and proving that the person performing the brokerage services was a duly licensed real

estate broker ... at the time the alleged services were commenced....

*Id.* § 20(a) (emphasis added).

The two statutory provisions quoted above use the term "person" to limit their application. The RELA contained a finite list of those "persons" required to be licensed in order to broker a real estate transaction. In 1992, a "person" meant "an individual or a corporation, foreign or domestic." *Id.* § 2(5).

■ Today, although the prohibition against persons acting as real estate brokers without a license remains the same, as a result of a 1997 amendment, the meaning of the statutory term "person" has significantly broadened. The RELA now includes within its definition of a "person," an "individual or any other entity, including but not limited to a governmental body, limited liability company, limited liability partnership, partnership, or corporation, foreign or domestic." Tex.Rev.Civ. Stat. Ann. Art. 6573a, § 2(5) (Vernon Supp.2000).

It is important to note, however, that this statutory amendment is prospective. Section 2 of Acts 1997, 75th Leg., ch. 13 provides:

> This Act takes effect September 1, 1997, and applies to a contract subject to the [RELA] that is executed on or after that date. A contract subject to the [RELA] that is executed before the effective date of this Act is governed by the law in effect on the day that the contract was executed, and the former law is continued in effect for that purpose.

Therefore, the definition of "person" in effect at the time the contract between the Trust and Popcorn Express was executed is the relevant definition for our analysis.

Under the RELA as it was in effect on January 1, 1992, when the parties to this appeal executed their contract, a trust was not included within the definition of a "person." Because a trust was not among the exclusive list of individuals or corporations required by the RELA to be licensed, the

Trust was not a "person" subject to the Act and thus not in violation of the statute by brokering the concession agreement without a real estate license.[4] Accordingly, the Trust properly brokered the concession agreement, and its lack of a license is no defense for Popcorn Express's contractual breach.

Finally, the purpose of the RELA is to eliminate or reduce fraud which might be inflicted on the public by unlicensed, unscrupulous, or unqualified persons. *See Henry S. Miller Co. v. Treo Enters.*, 585 S.W.2d 674, 675–676 (Tex. 1979); *see also LA & N Interests, Inc. v. Fish*, 864 S.W.2d 745, 751 (Tex.App.— Houston [14th Dist.] 1993, no writ) (*overruled on other grounds* 944 S.W.2d 631, 634). To that end, strict compliance with the terms of the RELA is required if a broker is to use the courts to recover his commissions. *See Miller*, 585 S.W.2d at 676.

Here, the Trust and its trustee, Vernon Young, were not subject to the statutory requirements in effect in 1992. Although the Trust was not licensed, it was neither required to be, nor did the statute provide any means by which the Trust could have obtained a license. Vernon Young, however, was duly licensed. Therefore, the prophylactic restrictions incorporated into the statute were satisfied by the involvement of a licensed real estate broker, and both Young and the Trust complied as strictly as was possible given the statutory requirements at the time of the execution of this agreement. *See Gale v. Belisle*, 694 S.W.2d 195, 197 (Tex.App.— Dallas 1985, no writ).[5]

## IV.

### Conclusion

Accordingly, we hold the appellant, the Trust, acting through Vernon Young, Jr., was not required to comply with the RELA in order to bring an action for the recovery of unpaid brokerage fees arising from negotiations of the Purveyor Contract. Further, Popcorn Express has not advanced any defense under the applicable RELA by which it may avoid its unpaid debt. Both parties stipulated that if this Court found either that the RELA is inapplicable or that appellants satisfied the provisions of the RELA, then Popcorn Express owes the Trust the unpaid fees. Because we have held that the RELA neither applies to the concession transaction nor requires the Trust to have a real estate license, we find in favor of appellants.

Accordingly, we reverse the judgment of the trial court and remand this case to the trial court for entry of judgment in accor-

---

4. Arguably, a trust is still not required to be licensed even under today's broader definition of a "person." Although the RELA now applies to a limitless number of entities, case law demonstrates a trust is not typically considered an "entity." Instead a trust may be defined as a fiduciary relationship in which one person holds a property interest subject to the equitable obligation to keep or use that interest for the benefit of another. *See* 72 Tex. Jur.3d 12 § 1 (1990); *see also Thompson v. Vinson & Elkins*, 859 S.W.2d 617, 623 (Tex.App.—Houston [1 st Dist.] 1993, writ denied) (holding a trust is not a legal entity). This issue and its potential ramifications for post–1997 brokerage fees, however, is not before the Court.

5. The fact that a trust is not a legal entity would not have prohibited Popcorn Express

from seeking redress if necessary because by statute, a trustee has the power to "compromise, contest, arbitrate, or settle claims of or against the trust estate or trustee." TEX. PROP. CODE ANN. § 113.019 (Vernon 1995). Therefore, had the Trust engaged in a fraudulent act in violation of the RELA or any other statute, Young and his wife, H. Elizabeth Young, as co-trustees, would have been the proper parties to sue as the legal representatives of the trust. *See Thompson*, 859 S.W.2d at 623 (citing *Coverdell v. Mid–South Farm Equip. Assoc.*, 335 F.2d 9, 13, 14 (6th Cir. 1964) for proposition that a trust cannot sue or be sued, but rather legal proceedings are properly directed at the trustee). Conversely, the Youngs are also the proper parties to bring a claim on behalf of the Trust. *See* TEX. PROP.CODE ANN. § 113.019 (Vernon 1995).