Filed 11/15/23

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| CASTAIC STUDIOS, LLC, | B325853 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. 22CHCV00670) |
| v. | |
| WONDERLAND STUDIOS LLC, | |
| Defendant and Respondent. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Melvin D. Sandvig, Judge.  Affirmed.

Nussbaum, Lane M. Nussbaum, Wayne M. Abb, and Richard J. Uss for Plaintiff and Appellant.

Johnson & Johnson, Neville L. Johnson and Melissa N. Eubanks for Defendant and Respondent.

———————————————

Plaintiff Castaic Studios, LLC (Castaic) and Wonderland Studios, LLC (Wonderland) entered an agreement under which Castaic granted Wonderland the "exclusive right to use" certain areas of its commercial property. The agreement specified that it was a "license agreement," as opposed to a lease, with Castaic "retain[ing] legal possession and control" of the premises. The agreement was to be "governed by the contract[] laws and not by the landlord tenant laws." When Wonderland defaulted, Castaic nonetheless filed an unlawful detainer action seeking possession of the property. The trial court sustained Wonderland's demurrer without leave to amend, reasoning that Castaic had waived its right to pursue the remedy of unlawful detainer. This was correct, so we affirm.

## FACTS

### 1. The Agreement and Wonderland's Default[1]

Castaic owns a commercial property in Castaic, California. In October 2021, Castaic entered a "License Agreement" with Wonderland, under which Castaic granted Wonderland "the exclusive," but "non-possessory" right "for the use of" the property, with the exception of a stage area and storage building.[2]

---

[1] These facts are drawn from Castaic's unlawful detainer complaint, including the attached exhibits.

[2] The License Agreement described the parties as: "This **Exclusive** License Agreement with option to purchase 'Agreement', dated as of October 27th, 2021, for reference purposes only, is made by and between Castaic Studios, LLC, hereinafter 'Castaic' or 'Licensor'; and Wonderland Studios LLC. A [*sic*] Delaware limited liability company having only one

The agreement afforded Wonderland 35 consecutive one-month options to extend. To exercise these options, Wonderland was required to timely make all payments owed and to send Castaic a letter of intention to extend the term for the next period at least 20 days before the end of the current month. In July 2022, Wonderland "was in default of the . . . payments owed" and failed to "timely send a letter of intention to extend the term for August of 2022 as required." Therefore, Castaic alleged, "the agreement expired by its own terms as of July 31, 2022."

On July 13, 2022, Castaic sent Wonderland an email notifying Wonderland that it was in default.[3] Wonderland then attempted to exercise the option even though the time for doing so had expired. Castaic alleged that it did not "serve[] a notice [on Wonderland] because the agreement expired by its own terms" when Wonderland failed to timely notify Castaic of its intention to exercise the August 2022 option.

## 2. *Relevant Terms of the Agreement*

Section 6 of the agreement states, "[t]his agreement is not a lease or any other interest in real property. It is a contractual arrangement that creates a revocable license. Licensor retains legal possession and control of the Premises and the area(s) assigned to Licensee. Licensor has the right to terminate this

---

member, BENI TADD ATOORI, who is the sole Managing Member, hereinafter 'Client' or 'Licensee'. Collectively the Licensor and Licensee are referred to herein as 'Parties', or individually, as a 'Party'."

The option to purchase is not at issue in this appeal.

[3] The email was captioned: "**Re: Default in license payment fee.**"

3

Agreement due to Licensee's default.  When this Agreement is terminated . . . the license to use the Premises is revoked. Licensee agree[s] to remove Licensee's personal property and leave the area(s) as of the date of termination.  Licensor is not responsible for personal property left in the area(s) after termination."

Section 12.1 states, "Licensee is in default . . . if:  [] Licensee does not pay the required amount payable . . . hereunder on the designated payment date and after written notice of the Licensee's failure to pay, Licensee does not pay within 3 days after the date of such notice . . . .  If Licensee defaults on Licensee's obligation under this Agreement, Licensee agrees that Licensor may cease to provide . . . access to the Licensee's area(s) of use without notice or the need to initiate legal process."

Section 13.3(a) provides that if Wonderland defaults, Castaic may "immediately terminate Licensee's right to use of the Premises by any lawful means, in which case Licensor's obligations under this Agreement shall immediately terminate and Licensor shall have option to immediately take over use of the Premises from the Licensee."

Section 29 provides, "[t]his agreement will be governed by the contract[] laws and not by the landlord tenant laws."

### 3.    *Unlawful Detainer Action*

Castaic filed its complaint for unlawful detainer against Wonderland on August 22, 2022, seeking possession of the property and unpaid "rent."

Wonderland demurred on the grounds the agreement expressly states it is not governed by landlord-tenant laws and the three-day notice Castaic served on Wonderland did not

contain the information that Code of Civil Procedure section 1161(2) requires before the filing of an unlawful detainer action.

After briefing and a hearing, the trial court sustained the demurrer without leave to amend. Relying on sections 6 and 29 (designating agreement as "revocable license," "not a lease," and governing law as "contract[] law," not "landlord tenant law"), the court concluded that Castaic had "waived its right to pursue the remedy of unlawful detainer." The court reasoned, Castaic "has not alleged, and cannot allege, a relationship between it and [Wonderland] that would allow [Castaic] to pursue an unlawful detainer action against [Wonderland]." The trial court also observed that even if Castaic could state a claim under the unlawful detainer statute, Castaic failed to comply with the statutory notice requirements set forth in Code of Civil Procedure section 1161(2).

After its complaint was dismissed with prejudice on November 14, 2022, Castaic filed a timely notice of appeal.

### DISCUSSION

Castaic asserts that the trial court erred in sustaining Wonderland's demurrer without leave to amend, arguing that despite express designation of "contract[] laws" and disavowal of "landlord tenant laws" as the governing law, the agreement did not preclude Castaic from resorting to the summary proceedings of unlawful detainer.[4]

We independently review a trial court's order sustaining a demurrer to determine whether the operative complaint states sufficient facts to constitute a cause of action. (*Centinela*

---

[4]     Castaic does not argue that if we affirm the trial court's order sustaining the demurrer, Castaic should be afforded the opportunity to amend the complaint.

5

*Freeman Emergency Medical Associates v. Health Net of California, Inc.* (2016) 1 Cal.5th 994, 1010; *Lee v. Hanley* (2015) 61 Cal.4th 1225, 1230.)  We accept as true all material facts properly pleaded in the operative complaint, but not contentions, deductions, or conclusions of fact or law.  (*Winn v. Pioneer Medical Group, Inc.* (2016) 63 Cal.4th 148, 152; *Evans v. City of Berkeley* (2006) 38 Cal.4th 1, 6.)

## 1.    *Pertinent Law*

### A.    Contract Interpretation

"The fundamental goal of contract interpretation is to give effect to the mutual intention of the parties as it existed at the time they entered into the contract."  (*Klein v. Chevron U.S.A., Inc.* (2012) 202 Cal.App.4th 1342, 1385 (*Klein*); see Civ. Code, § 1636.)  "When the contract is clear and explicit, the parties' intent is determined solely by reference to the language of the agreement."  (*Klein*, at p. 1385, citing Civ. Code, §§ 1638, 1639.)  The words of the contract are to be understood in their ordinary and popular sense.  (Civ. Code, § 1644.)  The principles of contract interpretation apply equally to leases as to any other kind of contract.  (See, e.g., *Qualls v. Lake Berryessa Enters.* (1999) 76 Cal.App.4th 1277, 183 (*Qualls*); *Golden West Baseball Co. v. City of Anaheim* (1994) 25 Cal.App.4th 11, 21.)

### B.    Waiver

"Any one may waive the advantage of a law intended solely for his benefit. But a law established for a public reason cannot be contravened by a private agreement."  (Civ. Code, § 3513; *Simmons v. Ghaderi* (2008) 44 Cal.4th 570, 585; *Outboard Marine Corp. v. Superior Court* (1975) 52 Cal.App.3d 30, 41.)

6

### C.     Unlawful Detainer

Unlawful detainer is a remedy available to a landlord against a tenant who breaches a lease and is " 'intended and designed to provide an expeditious remedy for the recovery of possession of real property.' " (*Borden v. Stiles* (2023) 92 Cal.App.5th 337, 344 (*Borden*); see generally Code Civ. Proc., § 1161.)

### 2.     *Analysis*

The trial court correctly sustained Wonderland's demurrer without leave to amend.  Whether an agreement constitutes a lease or a license is "a subtle pursuit."  (*Qualls, supra,* 76 Cal.App.4th at p. 1284; *id.* at p. 1285 [observing "the increasing creativity of contracts that blur the distinctions between interests"].)  Although Castaic argues at length that the agreement was in fact a lease despite its express designation to the contrary, we need not decide this issue to resolve the appeal.  Even assuming the agreement contains some elements of a lease, its express terms show the parties' intent to waive any rights afforded by the landlord-tenant laws, including a landlord's remedy of unlawful detainer.  That is what the trial court concluded, and we agree.

It is hard to imagine contractual language clearer than that found in section 29:  "This agreement will be governed by the contract[] laws and not by the landlord tenant laws."  The parties made explicit their intent that the document was not a lease.  It is titled: "LICENSE AGREEMENT."  And if that were not dispositive, the parties included paragraph 6 in their agreement.  We spell out the relevant part of the provision in the type style and font the parties used:

> "**LICENSE AGREEMENT. THIS AGREEMENT IS NOT A LEASE OR ANY OTHER INTEREST IN REAL PROPERTY. IT IS A**

**CONTRACTUAL ARRANGEMENT THAT CREATES A REVOCABLE LICENSE.**"

The parties' intent to avoid application of landlord-tenant law is further evinced by Castaic retaining "legal possession" of the premises.  Simply put, the parties unmistakably recorded their intent to forego the application of laws specific to landlord tenant relationships.  (See *Larson v. City and County of San Francisco* (2011) 192 Cal.App.4th 1263, 1297 [unlawful detainer actions are limited to right of possession and not other claims, even if related to the property].)

On appeal, Castaic urges that the parties may not "elect to contract around particular statutory protections."  But Castaic does not cite a single authority that supports this position.  Nor does Castaic argue that the parties' election to disavow the applicability of landlord-tenant laws violates any public policy.  (See *Series AGI West Linn of Appian Group Investors DE, LLC v. Eves* (2013) 217 Cal.App.4th 156, 164 ["A bedrock principle of contract law in California has always been that competent parties should have ' " 'the utmost liberty of contract' " ' to arrange their affairs according to their own judgment so long as they do not contravene positive law or public policy"].)  Instead, Castaic merely zeroes in on Wonderland's misguided discussion about choice of law provisions, which Castaic argues are "wholly inapplicable" because such provisions   concern "forum selection," not at issue here.  (See *Gramercy Investment Trust v. Lakemont Homes Nevada, Inc.* (2011) 198 Cal.App.4th 903, 908-909 [choice of law determination turns on either whether chosen state has a substantial relationship to parties or transaction or whether there is any other reasonable basis for choice]; *Nedlloyd Lines B.V. v. Superior Court* (1992) 3 Cal.4th 459, 465-466 (*Nedlloyd*)

[same, analyzing choice of foreign country's laws].) We agree with Castaic that Wonderland's choice of law arguments are unwarranted deviations from the real issues before this court, and we discuss the doctrine no further.

Castaic's position that the parties' express disavowal of "landlord tenant laws" should not be enforced conflicts with two well-established principles: First, " 'parties, generally speaking, have power to determine the terms of their contractual engagements.' " (*Nedlloyd*, *supra*, 3 Cal.4th at p. 465 & fn. 3.) Or stated slightly differently, " 'The basic policy in the field of contracts is protection of the justified expectations of the parties. Parties will generally enter into a contract with the expectation that the provisions of the contract will be binding on them.' " (See also *Maxim Crane Works, L.P. v. Tilbury Constructors* (2012) 208 Cal.App.4th 286, 292.) The second of these rules is that, other than "a law established for a public reason," "any person may waive the advantage of a law intended for his benefit." (Civ. Code, § 3513.) As the unlawful detainer remedy is " 'intended and designed to provide an expeditious remedy for the recovery of possession of real property' " (*Borden*, *supra*, 92 Cal.App.5th at p. 344), we see no "public reason" (Civ. Code, § 3513) that would prohibit a landowner from agreeing to waive the unlawful detainer remedy in any particular undertaking.

Castaic relies on *Provouskivitz v. Snow* (1997) 74 Cal.App.3d 554 and *Taylor v. Nu Digital Marketing, Inc.* (2016) 245 Cal.App.4th 283 (*Taylor*) to argue that it was entitled to proceed with its unlawful detainer action. Neither of these cases is relevant because neither involved a contract in which the parties expressly disavowed any rights they may have had under landlord-tenant law. Indeed, the agreement at issue in *Taylor*

9

expressly provided for remedies in the case of default that "are . . . available to landlords pursuant to Code of Civil Procedure, section 1161, et seq." (*Taylor*, at p. 287.)  Here, on the other hand, the contract provides for remedies that directly conflict with landlord-tenant law.  For example, section 12.1 provides that if Wonderland defaults on the agreement, "Licensor may . . . access . . . Licensee's area(s) of use without notice or the need to initiate legal process."

Castaic posits that it is entitled to proceed with its unlawful detainer action despite the provision in the parties' agreement that it shall be governed by "contract[] law and not landlord tenant law," arguing the unlawful detainer statute does not qualify as a "landlord tenant law" given that it expressly extends to licensor-licensee relationships.  (Code Civ. Proc., § 1161(1) [unlawful detainer is available to "an owner against . . . [a] licensee whose relationship has terminated].)  We reject this argument.  "In interpreting a contract, we give the words their ordinary and popular meaning, unless the parties . . . have given the words a specialized or technical meaning."  (*Coral Farms, L.P. v. Mahony* (2021) 63 Cal.App.5th 719, 727.)  It is well established that the unlawful detainer statute primarily concerns landlord tenant relationships.  (See, e.g., *Cavanaugh v. High* (1960) 182 Cal.App.2d 714, 716 ["[s]ubject to *exceptions* specified in [the unlawful detainer statute]," the existence of "a conventional relationship of landlord and tenant" "is *sine qua non* to maintenance of [an unlawful detainer] action" (first italics added); *Stancil v. Superior Court* (2021) 11 Cal.5th 381, 394 ["the Unlawful Detainer Act governs the procedure for landlords and tenants to resolve disputes about who has the right to possess real property"].)  Castaic's position that "landlord tenant laws"

10

should be construed not to include unlawful detainer asks us to ignore the "popular meaning" ascribed to unlawful detainer—i.e., that it is a remedy pertaining above all to landlord tenant relationships. We do not ignore that meaning.

Because we conclude that Castaic waived any right it may have had to bring an unlawful detainer action against Wonderland, we do not reach the issue of whether Castaic fulfilled the notice requirements set forth in Code of Civil Procedure section 1161(2).

## DISPOSITION

The judgment of dismissal is affirmed. Wonderland is awarded costs on appeal.

RUBIN, P. J.

WE CONCUR:

BAKER, J.

MOOR, J.

11